ROPER et al., Respondents, v. NOEL, et al., (NOEL, Appellant.)

(143 N. W. 130.)

1. **Fraud—Deceit—Pleading Conspiracy.**

Where plaintiff sued defendants for fraud, alleging deceit and · misrepresentations in an exchange of realty for a stock of goods, an allegation of conspiracy to defraud plaintiff did not change the gist of the action.

2. **Fraud—Deceit—Evidence—Question for Court, Not Jury—Sufficiency of Evidence.**

Where, in an action for fraud and deceit in an exchange of property, the evidence of fraud and deceit as to one of defendants was wholly conjectural, it was error to submit the case to jury as to him. **Held,** further, that the evidence was insufficient to sustain the verdict.

3. **Fraud—False Representations—Exchange of Property—Sufficiency of Evidence.**

Defendant N., having in his hands as a real estate agent, certain realty in the Northeast quarter of section 30 of a specified township for exchange, offered it to plaintiffs, one of whom came to look at it when N. was away, and defendant E., who had his office with N., attempted to show the property, but showed property in the southwest quarter of section 17 instead. On N's return he wrote plaintiffs that the "wrong quarter" had been shown, but told him that defendant E. desired to complete the exchange if he would do so without seeing the proper land. **Held,** that the fact that defendant N. did not notify plaintiffs that the "wrong section" had been shown was insufficient to charge him with fraud.

4. **Fraud—Deceit—Exchange of Property—Inexcusable Negligence —Instructions.**

Where plaintiff, contemplating an exchange of a stock of goods for realty, went to examine the land, and, knowing he was dealing with strangers, failed to inquire as to the location, which he could have easily done, and was shown the wrong property, it was error to refuse to charge that if the means of knowledge were at hand and equally available to both parties, and the subject-matter was open to inspection of both alike, and there was no fiduciary relation or warranty of facts, the injured party, plaintiff, must show that he availed himself of the means of information at hand before he would be heard to say he had been deceived by defendant's misrepresentations; that where there is fraud on· one side and inattention to reasonably guard his interest on the other, and but for the latter feature the fraud would have been ineffective, and loss occurs to the inexcusably negligent one, he is without remedy, and that if plaintiff, after being notified of the mistake, did not

exercise prudence of an ordinary man, but completed the deal rashly and negligently, he could not recover.

5. **Trial—Fraud—What Constitutes—Exchange of Property—Instructions—"Deceit."**

Under Civ. Code, Sec. 1201, declaring that actual fraud may consist of a positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true, and Sec. 1293, subd. 2, defining "deceit" as the assertion of a fact that which is not true by one who has no reasonable ground for believing it to be true, held, that where plaintiffs were induced to exchange stock of goods for realty by one of defendants showing property in a different section from that transferred to plaintiffs, an instruction that if such defendant showed plaintiff the wrong land, either knowingly or without knowing what land he was showing, and then or afterwards represented to plaintiff that he was showing or had shown him the proper section, and plaintiff without information to contrary, believed such representation, and made the trade believing it to be true, and was damaged thereby, then plaintiff was entitled to recover, was erroneous, as authorizing jury to return a verdict against such defendant, though he was warranted in his representation by the information that he had, and though he had reasonable ground for believing that his information was true.

(Opinion filed October 7, 1913.)

Appeal from Circuit Court, Hyde County. Hon. LYMAN T. BOUCHER, Judge.

· Action by C. E. Roper and another against Charles E. Noel and others, to recover for alleged fraud and deceit. From a judgment for plaintiffs, and from an order denying a new trial, defendant Noel appeals. Reversed and remanded.

*Boyce, Warren & Fairbank,* for Appellant.

There was no agreement between Noel and Elliot to defraud the plaintiffs. Plaintiffs abandoned the theory of conspiracy and tried the case along the line of fraud by Mr. Elliot as agent of Mr. Noel. There was, however, no pleading to sustain such a theory of the case.

No fraud was committed by Noel. The evidence shows that Noel never made any representation in regard to this land. Therefore, the plaintiff must rely upon the representations of Mr. Elliot and in some way connect them with Mr. Noel.

It was necessary to prove that Elliott knew that the representation was false, or that he made it rashly and without any

knowledge of its truth and as a positive statement. None of these things are proven, or even attempted to be proven in the evidence. Even if a fraud was committed by Elliot when we try to connect Mr. Noel with the fraud, there is no evidence connecting him with the false statement made by Elliot, if one was made by him.

One cannot be convicted of fraud entirely on suspicion. What further could Mr. Noel have done to protect himself than he did do, when he wrote the letter, "Exhibit A?"

The instructions of the court were erroneous. By them the question of Noel's responsibility was left entirely to the speculation and opinion of the jury. They were instructed that if they believed that Noel assisted Elliot in making the deal, or if they believed that Noel authorized Elliot to act for him, he was liable. They were not instructed that there must be some evidence upon which to base such a belief or opinion.

The pleading was of a conspiracy, and the evidence was presumably introduced to prove such a conspiracy, but the court without any warning and without any amendment of the pleadings, or request on the part of anyone after the evidence was closed and the argument had been made to the jury, instructed the jury and said absolutely nothing about a conspiracy. Smith v. Mutual Cash Guarantee Fire Insurance Co., 21 S. D. 433; Seiberling v. Mortenson, 9 S. D. 576; Baxter v. Campbell, 17 S. D. 475; Reed v. Coughran, (S. D.) 111 N. W. 559; Peter Mintener Lumber Co. v. Harvey, (S. D.) 132 N. W. 252.

In this case it is apparent that Corey was the principal and that Noel was his agent and that if Elliot was acting as an agent at all, he was a sub-agent appointed by Noel and his appointment ratified by Corey who accepted the money from Mr. Elliot direct. If therefore, anyone was responsible for the acts of Mr. Elliot it was Mr. Corey and not Mr. Noel.

*M. Harry O'Brien*, and *Royal C. Johnson*, for Respondents.

The testimony in this case proves a conspiracy or fraud on the part of the defendants, Noel and Elliot.

Both the defendants Noel and Elliot received the fruits of the fraud. There is strong circumstantial evidence, and evidence sufficient to warrant its being left to the jury, as to whether or not

they conspired together to inveigle the plaintiffs into the purchase of the land.

The complaint states a cause of action for fraud, misrepresentation and deceit against both defendants, after eliminating the charge of conspiracy.

There was sufficient evidence tending to connect Noel with the transaction, to justify the court in permitting the case to go to the jury as to him.

The jury had a right to believe from the evidence that when Mr. Noel wrote "Exhibit A" to Mr. Roper, in which he called his attention to the fact that he had been shown the wrong quarter, he knew that Mr. Roper had not only been shown the wrong quarter, but the wrong section as well.

GATES, J. The defendant J. H. Corey, a resident of Nebraska, owned the N. E. ¼ of section 30, township 112, range 80, in Hughes county, S. D. He placed the land with the defendant Noel, a real estate dealer of Highmore, S. D., for sale or trade. Plaintiffs lived at Ft. Dodge, Iowa. They owned a cigar store. They advertised in a newspaper their store, offering to trade for South Dakota real estate. Corey saw this advertisement, and wrote Roper that he had a piece of land in Hughes county, S. D., and that Noel was looking after it for him. Corey wrote Noel about the matter, and Noel wrote Roper that he was instructed to show the land; that he had full authority to deal for their store if the same invoiced $2,000. Roper then wrote Noel that he would come up and look at the land, and also sent a telegram. This telegram came while Noel was away. Defendant Elliot had a desk in Noel's office. They were not in partnership. Elliot testified that he sometimes took care of Noel's business when he was gone, the same as he did for other land men; that they had such arrangement with each other. Noel testified that he did not think there was ever any arrangement such as that, and, ''taking that as a general statement, Elliot would be mistaken," and that he did not remember of Elliot ever taking care of any land for him. Elliot opened the telegram and found that Roper would be at Pierre the next morning, and wanted Noel to meet him. Elliot at this time knew nothing about the land or the instructions to Noel. He looked up the correspondence, but was unable to find any description of the land. He knew,

however, that Corey had at one time owned a quarter section in section 30, township 112, range 80, and he thought that it was the S. W. ¼. He went to Pierre and met Roper at the hotel, telling him that Noel was away, and that he would try to show him the land. With the aid of a map they drove out to the proper township and tried to find section 30. Roper did not know the description of the land, and neither he nor Elliot had ever been in the vicinity. On the way they passed a little frame house which it afterwards developed belonged to Valentine Buell, and was on the S. W. ¼, section 15. They located what they thought was the S. W. ¼ of section 30. Elliot testifies that he then told Roper they had better go over to that house to find out where they were; that he did not talk to Buell, and that Roper did, and that Roper went and asked him the location. This Roper denied. They then drove back to Pierre, and Roper made inquiries as to the prices of land. They went back to Highmore that night, and, Noel having not yet returned, Roper talked over the trade with Elliott and then went back to Ft. Dodge, Iowa. When Noel returned, Elliot told him what he had done, and said that he had shown Roper the S. W. ¼ of section 30. Noel at once told him that he had shown Roper the wrong quarter, and that it was the N. E. ¼ of section 30 that Corey owned. There is nothing to show that Noel at that time knew Roper had been shown land in section 17. It does not appear that Noel and Elliot ever talked about this land until after Roper came to Pierre. Noel claimed that he told Elliot he would not put any money in the transaction, but Elliot was anxious to go ahead with the trade himself. Noel wrote Roper as follows (omitting date, address and signature):
"I am indeed sorry that I did not see you last Tuesday but was obliged to go to Nebraska to close a deal. Mr. Elliot who has a desk in my office did the best that he was able to do and upon receipt of your wire jumped into the collar. The difficulty now, as it appears to me, is that he has showed you the wrong quarter. He says that you will deal regardless of his error. The only quarter that Mr. Corey now owns in the township is the N. E. ¼ of 30-112-80. If you still wish to deal I will arrange matters so that you can close it up the first of next week. I have sent the abstract to Pierre for continuation and expected it back today. It did not come tonight but will see that it goes forward to you

tomorrow. The deed I will send to your Iowa Savings Bank with instructions that same is to be turned to you upon Mr. Elliot's personal order when you have deposited bill of sale to your stock and fixtures in said bank." Elliot took this letter to Roper, and Roper testiified that Elliot told him they had been on section 30 and that the N. E. ¼ lay northeast of the S. W. ¼ which they had been on. Roper satisfied himself from the map that he had seen the S. W. ¼ and went ahead with the trade. Upon the consummation of the trade, Elliot received $150 commission and Noel got $100 commission. It developed that Elliot and Roper had been upon section 17 of the same township, instead of section 30. The evidence tended to show that the N. E. ¼ of section 17 was of about the same quality as the S. W. ¼, but that section 30 was in the hills near the Missouri river, and was of much less value than land in section 17. Noel never saw Roper until the time of the trial. The defendant Corey was not served with process. The jury returned a verdict against defendants Elliot and and Noel. Judgment was entered thereon, and from such judgment and order denying a new trial, defendant Noel appeals.

[1] This is an action for fraud, deceit, and misrepresentation. Incidentally a conspiracy is alleged on the part of defendants and it is urged on the part of appellant that no conspiracy was proven. But the allegation of conspiracy does not change the real gist of the action. Lovelett v. Heumpfner, 32 S. D. 35, 141 N. W. 1080. The other grounds of appeal are the insufficiency of evidence to sustain the verdict, and errors in instructing and in failing to instruct the jury. We are of the opinion that there was not sufficient evidence connecting Noel with the alleged fraud and deceit to justify the verdict.

[2] Considering the evidence in the light most favorable to respondent, the connection of Noel with the fraud and deceit, if any, rests solely upon conjecture. In such a situation the case should not be submitted to the jury. Scott v. Boyne City, G. & A. R. Co., 169 Mich. 265, 135 N. W. 110.

[3] It is urged that because Noel said in his letter "he has showed you the wrong quarter" that the inference is that Noel led Roper to believe the land showed was another quarter of section 30, and that he should have said "he has showed you the 'wrong

section.'" Even if Noel knew that the land shown was not in section 30, it would not necessarily follow that by the use of the term "wrong quarter" such would be the inference. It is a matter of common knowledge that 160 acres of land are commonly referred to as "a quarter" or "a quarter section." The use of the words "wrong quarter" in the letter to Roper conveys no impression to our minds that Noel was trying to mislead Roper. Wherever the true land was situated it would have been the natural thing for Noel, or any real estate man, to refer to the land shown as "the wrong quarter."

It is further argued, because Noel testified that he did not have anything further to do with the deal, and it subsequently appeared that upon settlement with Corey he received $100 for this transaction, that the rule, *"Falsus in uno, falsus in omnibus,"* should be applied. But as before stated, we are of the opinion that the evidence connecting Noel with the fraud rests solely on conjecture, and for that reason the·verdict may not stand.

[4] We are of the opinion that the court erred in denying the third, sixth, and thirteenth requested instructions, which are as follows:

"(3) If the means of knowledge are at hand and equally available to both parties, and the subject-matter is open to inspection of both parties alike, and there are no fiduciary or confidential relations, and no warranty of the facts, the injured party must show that he has availed himself of the means of information existing at the time of the transaction before he will be heard to say that he has been deceived by the misrepresentations of the other party."

"(6) Where there is fraud on one side and inattention to reasonably guard his interests on the other, and but for the latter feature the former would have been ineffective, and loss' occurs to the inexcusably negligent one, he is without remedy."

"(13) If you find that the plaintiff after being notified of the mistake did not exercise the prudence of an ordinary man, but went ahead with the deal rashly and negligently, he cannot recover."

We believe these requested instructions properly state the law of the case upon the subjects therein expressed, and that the same were not substantially covered by the fourth division of the

charge as given below. It seems to us that a person of ordinary prudence in dealing with strangers would have inquired of Valentine Buell as to the location of his land. If Roper had done this, he admits that he would have known he never was on section 30.

The court instructed the jury as follows:

"(1) The plaintiff in this case seeks, as you know, to recover damages against the defendants C. E. Noel and Walter A. Elliot because he claims that these defendants knowingly induced him to buy a certain piece of land, to-wit: The northwest quarter of section 30, township 112, range 80, in Hughes county, in this state, and obtained his property by misrepresenting to him that this land in section 30 was land which was shown to him and represented to him to be section 30, in Hughes county, S. D.

"(2) The defendants, on the other hand, have filed an answer denying each and every allegation of the plaintiff's complaint, and I instruct you that the burden of proof is upon the plaintiff to prove by a fair preponderance of evidence, the truth of his claim for damages, both as to whether he is entitled to any damages at all, and, if so, the amount.

"(3) If you believe from the evidence that the defendant Elliot showed the plaintiff the wrong land, either knowingly or without knowing what land he was showing, and at the same time or afterwards represented to the plaintiff that he was showing him, or had shown him, the northwest quarter of section 30, or some part of section 30, and that the plaintiff, without information to the contrary, believed that representation and made the trade believing it to be true, and was damaged thereby, then the plaintiff should have a verdict for his damages, or whatever damage you find he sustained as a result of that act, if you do so find.

"(4) If you believe from the evidence that when the plaintiff was notified by Mr. Noel that he had been shown the wrong quarter, and I believe there is no dispute in the evidence but that he was notified by Mr. Noel that he had been shown the wrong quarter, if he was informed or had reason to believe that he had been shown some part of section 30, and if you believe from the evidence that the plaintiff completed the deal knowing or having reason to believe that he had never seen section 30 at all, then he was guilty of contributory negligence and cannot recover, because

he could not then claim he had acted on the representations of the defendant.

"(5) As to the defendant Noel, I instruct you the plaintiff cannot recover against him unless you believe from the evidence that the plaintiff is entitled to a verdict against Elliot, and that Noel knowingly assisted Elliot in making the deal. If you do believe that Noel assisted in the deal or authorized Elliot to act for him, then he would be liable if Elliot is. If your verdict · should be for the plaintiff, it will be your duty to find the value of the land he received, and then find the value of the property that he gave for it, then add the $1,600 mortgage which he assumed, and if the sum of the goods and fixtures is greater than the value of the land, that difference would be the plaintiff's damages.

"(6) In this case there might be one of three verdicts. If you find the plaintiff is entitled to recover at all, you may find for the plaintiff on all the issues and assess his damages at whatever you find them to be.

"(7) The form will be: 'We, the jury, find for the plaintiffs and against the defendants and assess damages at ———,' whatever sum you find his damages to be, if you do so find. If you do not believe from the evidence that Mr. Noel participated in the transaction, and that the defendants made this trade as the result of a misrepresentation on the part of Elliot, your verdict will be—that is, if you do not believe from the evidence that Noel assisted in the transaction and did not authorize Elliot to act in his behalf, then you could not find a verdict in any event against Noel, and your verdict should be, if you find for the plaintiff: 'We, the jury, find for the plaintiff, and against the defendant Elliot and assess damages at ———,' whatever sum you find. If you find that Noel was not, and Elliot was not, implicated as I have stated, then your verdict will be: 'We, the jury, find for the defendants.'

"(8) You are the judges in this case. Take the evidence and consider it fairly and fully, both as to what Elliot and Noel did, and take the testimony of all the witnesses on the question of value, if you come to that, and let your verdict be in accordance with the evidence as near as you can make it.

"(9) I will instruct you further that if you should fail to find from the evidence that the defendant Noel actively assisted or

participated in this transaction, but do believe from the evidence that he authorized Elliot and completed the transaction knowing that Elliot had misrepresented to the plaintiff the land shown, then in that case Noel will be guilty also, but not otherwise."

[5] Before retiring, one of the jurors expressed an uncertainty as to the charge, and the court restated paragraph 3. The third paragraph of the instructions as given was misleading. The sections of the Civil Code bearing upon such subject are as follows: Sec. 1201. "Actual fraud, witihin the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true. 2. The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true. 3. The suppression of that which is true, by one having knowledge or belief of the fact. 4. A promise made without any intention of performing it; or, 5. Any other act fitted to deceive."

Sec. 1292. "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.

Sec. 1293. "A deceit within the meaning of the last section is either: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true. 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true. 3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, 4. A promise made without any intention of performing."

The facts would seem to make subdivision 2 of section 1201, and subdivision two of section 1293, applicable to this case. The question is, Was Elliot warranted, by the information which he had, in asserting that the land shown was section 30? Or, in the language of section 1293, did Elliot have a reasonable ground for believing that it was section 30? The charge as given in said

paragraph 3 would justify the jury in returning a verdict against Elliot, although he was warranted in his assertion by the information which he had, and although he had reasonable ground for believing his information to be true. It was therefore erroneous and misleading. While Elliot has not appealed, the instructions as a whole virtually state that if Elliot was liable, Noel was, if Noel assisted in making the deal; hence a misleading instruction as to Elliot's liability is also misleading as to the liability of Noel.

For the reasons given, we think the judgment and order denying a new trial should be reversed, and the case remanded for a new trial.