WARD et al, Plaintiffs and Respondents, v. DAKOTA TELE-PHONE & ELECTRIC COMPANY et al, Defendants and Appellants.

WARD et al, Plaintiffs and Appellants, v. MISSOURI RIVER TELEPHONE COMPANY et al, Defendants and Respondents.

(206 N. W. 695.)

(File Nos. 4961, 5005.  Opinion filed December 19, 1925.)

1. **Appeal and Error—Judgment Roll Alone Considered on Appeal From Judgment Only.**

    On an appeal from judgment only, without denial of new trial, the judgment roll only is before appellate court for consideration, and, if findings support judgment, it must be affirmed.

2. **Corporations—Bills and Notes—Findings Held to Sustain Judgment for Seller on Purchaser's Note for Corporate Stock.**

    In action on note given for stock in telephone companies, court's findings as to circumstances relating to sale of stock, and which failed to find that purchasers had been damaged in and specific amount by fraudulent representations as to value, held to sustain judgment for plaintiff.

3. **Fraud—Damages—Value—Damages Difference Between Actual and Represented Value.**

    A purchaser's damage for fraud and deceit of seller in representing kind, quality, value, and fitness of article sold is the difference between what the property was worth and what it would have been worth if it had been as represented.

4. **Corporations—Pledge—Pledgee of Stock Has Good Title to Stock as Security Without Recording Assignment on Corporation Books.**

Pledgee of stock as security for payment of note, having possession of certificates of stock properly assigned as security, has good title to them as security without record of assignment on books of corporation.

5. **Corporations—Pledge—Conversion—Purchaser of Property and Assets of Corporation With Notice That Sale Was Unauthorized Held Liable to Pledgee of Stock.**

The purchaser of property and assets of a corporation, who had full knowledge that stockholders had pledged stock under agreement not to vote it to sell property, held jointly liable to pledgee with pledgor for conversion.

6. **Corporations—Conversion—One Acting As Conduit for Illegal Transfer of Corporate Property, With Notice of Rights of Pledgee of Stock, Jointly Liable.**

Where stockholder pledged stock to secure note for purchase price, and agreed not to vote stock to effect sale of corporate property, one acting as conduit for sale with notice of rights of pledgee of stock held jointly liable with pledgor and purchaser of corporate property to pledgee.

Sherwood and Gates, JJ., dissenting.

Appeal from Circuit Court, Charles Mix County; Hon. R. B. Tripp, Judge.

Consolidated actions by E. C. Ward and others against the Dakota Telephone & Electric Company and others. From a judgment for plaintiffs against defendants Funston, the latter appeal. From an order overruling the motion of plaintiffs for a new trial as to issues between plaintiff and defendant Dakota Telephone & Electric Company and others, plaintiffs appeal. Judgment and order appealed from by plaintiffs reversed and remanded, with instructions. Part of judgment appealed from by defendants affirmed.

In No. 4961:

*H. E. Judge,* of Sioux Falls, and *Orvis & French,* of Yankton, for Appellants E. B. and J. G. Funston.

*Gardner & Churchill,* of Huron, for Respondents E. C. Ward and others.

In No. 5005:

*Gardner & Churchill,* of Huron, for Appellants E. C. Ward and others.

*Null & Royhl,* of Huron, for Respondent Dakota Cent. Telephone Co.

*Orvis & French,* of Yankton, and *H. E. Judge,* of Sioux Falls, for Respondent Edmund A. Bruce.

Appellant cited: Fletcher on Corporations, Vol. 6, Secs. 3879-3882, 14 C. J. 589, 590; Clark and Marshall on Private Corporations, 760; Mudge v. Black, 140 C. C. A. 397; St .Louis Blast Furnace Company, 128 C. C. A. 519; Fitzpatrick v. Dispatch Pub. Co., 2 So. 727; Sanford v. Handy, 23 Wendell, 260; Mead v. Bunn, 32 N. Y. 281; First Avenue Land Co. v. Parker, 111 Wis. 1, 86 N. W. 605; Clarge v. Lincoln L. Co., 59 Wis. 655,660, 18 N. W. 492; Throson v. Universal Mfg. Co., 164 Wis. 44, 159 N. W. 575; Kimball v. New England Roller Grate Co. (N. H.), 45 Atl. 53; Coolidge v. Rhodes, 199 Ill. 24, 64 N. E. 1074; Sykes v. Pure Food Cider Co., 157 Ia. 601, 138 N. W. 554; Hinkley v. Sac Oil & P. L. Co., 132 Ia. 396, 107 N. W. 629; Van Slochem v. Villard, 207 N. W. 587, 101 N. E. 467; Fairchild v. McMahon, 139 N. Y. 290, 34 N. E. 779, 36 A. S. R. 701: Townsend v. Felthousen, 156 N. Y. 618, 51 N. E. 279; Lukens v. Aiken, 34 Atl. 575; Wilson v. Cattle Co., 73 Fed. (C. C. A.) 994; Olcott v. Bolton, 50 Neb. 779, 70 N. W. 366; Tacoma Coal Company v. Bradley, 2 Wash. 600, 27 Pac. 454, 26 A. S. R. 890; Huntington v. Lombard, 22 Wash. 202; 14 C. J. 455, 707; Gates v. Paul, 117 Wis, 170, 190; Franey v. Warner, 96 Wis. 222, 235; Hindman v. First National Bank, 112 Fed. 936, 57 L. R. A. 108; Fargo Gas & Coke Co. v. Fargo Gas & Electric Co., 4 N. D. 219, 37 L. R. A. 593; Tooker v. Alston, 159 Fed. 603, 16 L. R. A. (N. S.) 818; Beare v. Wright, 14 N. D. 34, 69 L. R. A. 409; Clarke v. Morgan County Bank, 196 Fed. 109; Chandler v. Andrews, 192 Fed. 543; Ohlwine v. Pfaffman (Ind.), 100 N. E. 777; Campbell v. Park, 128 Ia. 181, 101 N. W. 861, 104 N. W. 799.

Respondent cited: Fletcher on Corporations, Vol. II, Sec. 1216, Vol. III, Sec. 1614; 14 A. C. J. 543; 37 Cyc. 1616; 17 R. C. L., Secs. 560, 562; U. S. v. U. P. Ry. Co., 160 U. S. 1; Thomas v. West Jersey Ry. Co., 100 U. S. 71; Brunswich Gas Co. v. U. S. (Maine), 27 Atl. 526; St. Louis Co. v. Terre Haute Ry. Co., 145 U. S. 393; Schwab v. Potter Co. (N. Y.), 87 N. E. 670; Victor v. Lewis Mills (N. D.), 16 L. R. A. (N. S.) 1020; Cumberland Tel. Co. v. Evansville, 127 Fed. 187, 143 Fed. 238; Michigan Telephone Co. v. City of St. Joseph, 121 Mich. 502, 80 N. W. 383; Treadgill v. Pumphrey, 87 Tex. 597, 30 S. W. 356; American National Bank v. Wheeler Adams Auto Co., 31 S. D. 524.

SKINNER, Circuit Judge. The matter now before this court is complicated by the fact that in the trial court two actions were consolidated and tried as one, and that appeals have been taken by parties on each side of these two actions as originally brought.

The real object of the two actions was the recovery by the plaintiff E. C. Ward of the amount alleged to be due on a certain promissory note for $20,000, signed by the defendants J. G. Funston and E. B. Funston. The defendants in the two actions are identical, and the only apparent necessity for two separate actions arises from the fact that one of the plaintiffs, Roy Earl Wiley, is acting in the capacity of receiver in the liquidation of two different corporations whose affairs are involved in the matters at issue. The evidence, as presented in the trial court, has precisely the same effect as to the issues of each of the two actions, and the allegations of the pleadings may be considered as identical in the two, and they will be so considered in this opinion. The complaint alleges that, during all the times material to the issues, the defendants Dakota Telephone & Electric Company and the Missouri River Telephone Company were corporations organized under the laws of this state, and owned and operated certain long distance and local telephone lines and exchanges in certain counties of the state, and had and maintained their principal offices in Geddes, Charles Mix County, S. D.; that on August 27, 1907, there were outstanding 158 shares of the capital stock of the Dakota Telephone & Electric Company of the par value of $100 each, and that the plaintiff Ward owned 130 of said shares; and that on said date there were oustanding 1,673 shares of the stock of the Missouri River Telephone Company of the par value of $25 per share, of which the plaintiff Ward owned and controlled 1,016 shares.

And the complaint further states: That on or about the said 27th day of August, 1907, the plaintiff Ward sold to the defendants J. G. Funston and E. B. Funston the said shares of stock owned and controlled by him in said corporations, at the agreed purchase price of $35,000, of which $3,000 was to be paid in cash, $12,000 by the transfer to Ward by the Funstons of a certain telephone line in Missouri, and $20,000 to be paid in accordance with the terms of the note sued upon, and the payment of said note was to be secured by the pledge of the shares of stock so sold

by Ward to the Funstons; that thereafter the $3,000 cash payment was made, the telephone line in Missouri transferred to Ward, the stock in the two South Dakota corporations assigned by Ward to the Funstons and by them reassigned to Ward and delivered to him as a pledge to secure the payment of the $20,000 note; the terms of such pledge agreement being set forth in the note itself, which reads as follows:

"$20,000.                    Geddes, South Dakota, Oct. 5, 1907.

"For value received, I promise to pay to the order of E. C. Ward, at Geddes, South Dakota, $20,000.00, with interest thereon at the rate of five and one-half per cent per annum, from this date until paid, interest payable semi-annually on the fifth day of Oct. and Apr. each year. The principal is to be payable as follows: One thousand dollars ($1,000) on or before the 5th day of October in each of the years 1914, 1915, 1916, 1917, and the balance of the principal on or before the 5th day of October, 1917. As security for the payment of this note, the makers have assigned to the payee 130 shares of the capital stock of the Dakota Telephone & Electric Company, each share being of the par value of one hundred dollars, and 1016 shares of the capital stock of the Missouri River Telephone Company, each share being of the par value of twenty-five dollars, which shares of stock the payee agrees to reassign to the makers of this note upon payment of the note. The makers of this note agree that the telephone lines and other property of the Missouri River Telephone Company and Dakota Telephone & Electric Company shall not be mortgaged or sold, except minor parts thereof, before the full payment of this note, and further agree that the telephone lines and other property of said companies shall at all times before the full payment of this note, be. kept and maintained in at least as good condition as the same now is. It is further agreed that if the property of said companies, or either of them, shall be mortgaged or sold, except minor parts thereof, before the full payment of this note, or if the telephone lines and other property of said companies, or either of them, shall not be kept and maintained in as good condition as the same now is, this note shall at once become due and payable, at the option of the owner thereof.

                                  "[Signed] Jesse G. Funston.
                                       "E. B. Funston."

And the complaint further alleges that on or about the 5th day of October, 1907, the Funstons, as holders of the stock transferred to them by Ward, elected themselves directors and officers of the two South Dakota corporations, and went into complete possession and control of the property and business of said corporations, and continued in the possession, control, and management thereof until or about November 1, 1914. And the complaint alleges that on November 23, 1909, the sum of $600 was paid to apply upon the principal of the $20,000 note, and that interest was paid upon said note by the Funstons up to October 5, 1913, and that no other or further payments have been made thereon, and that the plaintiff E. C. Ward is still the owner and holder of said note and of the indebtedness evidenced thereby. And it is further alleged that at all times material to the issues the Dakota Central Telephone Company was a corporation of this state owning and operating telephone lines in the same territory as the lines of the corporations managed by the Funstons; that by illegal and unfair competition the said Dakota Central Company sought to discourage the Funstons in their telephone business and to render said business unprofitable; that said efforts did so discourage and injure the business of the corporation owned and managed by the Funstons that about August, 1914, the said Dakota Central Telephone Company, through its officers and representative, induced the Funstons to enter in a conspiracy, and did enter into a conspiracy with the said Funstons and with the defendants Bruce and others, to induce the stockholders of the two corporations controlled by the Funstons to authorize the directors of said corporations to sell all the physical property of said corporations, and thereby to enable the Dakota Central Telephone Company to purchase said property at an inadequate price, thereby rendering valueless the stock in said corporations held in pledge by the plaintiff Ward as aforesaid.

And it is further alleged that in pursuance of said conspiracy, and to accomplish its purposes, the Funstons, as officers of the said two corporations, called a meeting of the stockholders of said corporations to meet on September 24, 1914; that no regular or sufficient notice of such meeting was given, and that the calling of said meeting was purposely concealed from the plaintiff Ward.

And it is alleged that at said meeting the Funstons and Bickelhaupt, the secretary of the Dakota Central Telephone Company, represented to the other stockholders present that the physical assets of the two corporations could be sold for about $33,000, and by such representations induced such other stockholders to vote for a resolution authorizing the directors of said corporations to sell all of said physical assets; that at said meeting the said Bickelhaupt voted in favor of said resolution 164 shares of stock in the Missouri River Telephone Company, which were held by him as trustee for the Dakota Central Telephone Company, the real owner thereof, and that the Funstons voted in favor of said resolution the 1,016 shares of stock in said Missouri River Telephone Company, which were conveyed to them by the plaintiff Ward and then held in pledge by the said Ward as aforesaid. And said complaint further alleges that, pursuant to said conspiracy, on September 30, 1914, the directors of the Dakota Telephone & Electric Company, of whom the defendants Funston were a majority, adopted a resolution authorizing a sale of all of the physical property of said corporation to the defendant Bruce for the sum of $400, and that at the same time the said Funstons, acting as directors of the Missouri River Telephone Company and constituting a majority of such directors, adopted a resolution authorizing the sale of all the physical property of said corporation to the defendant Bruce for the sum of $11,600.

And said complaint further alleges that thereafter said Funstons executed bills of sale purporting to transfer all of said property of both of said corporations to the defendant Bruce, and that said Bruce, without making any payment therefor, immediately assigned said bills of sale to the defendant Dakota Central Telephone Company. And plaintiffs say that the defendant Bruce was used as a mere conduit in carrying out the purpose of transferring the property to the Dakota Central Company, that the said Dakota Central Company was the real purchaser through said proceedings, and that the name of the defendant Bruce was used in an effort to avoid the effect of notice which the officers and representatives of said Dakota Central Company then had of the claim which the plaintiff Ward had upon the stock and assets of the two corporations whose property was thus being transferred. And the plaintiff further says that the defendant Bruce knew of

the said claims of the plaintiff Ward, and of the purpose for which his name was being used in said transaction, and aided and abetted therein, and that he received from the Dakota Central Company for such aid therein the sum of $4,000, the said Dakota Central Company depositing in a Huron bank the sum of $16,000, with directions that after payment of the debts of the two corporations whose property was being transferred the sum of $4,000 should be paid to said Bruce, and the balance remaining out of the $12,000 should be paid to the directors of said corporation.

And the plaintiffs further allege that after their purported purchase of said property, the officers and agents of the Dakota Central Company appropriated said property and converted it to the use of the said Dakota Central Company, and caused the telephone lines thereof to be torn down and dismantled and the telephone instruments to be removed and the entire property to be destroyed in so far as any usefulness to plaintiff Ward under his pledge is concerned. And said plaintiff says that because of these facts he should have judgment for the amount due upon his $20,000 note against the defendant Dakota Central Telephone Company and defendant Bruce as well as the defendants J. G. Funston and E. B. Funston.

To these claims of the plaintiffs the defendant answers, alleging that the shares of stock upon which Ward claims a lien as pledge were allowed by said Ward to stand upon the books of the corporations in the names of the defendants J. G. Funston and E. B. Funston, and that said Funston had a right to vote said stock at all meetings of the corporations by virtue of an agreement with said Ward; and that said Dakota Central Company had no knowledge or notice that said Funstons were not the owners of said stock with full power to vote the same for all purposes. And said defendant further says that at the time the Dakota Telephone & Electric Company and the Missouri River Telephone Company sold their properties, as alleged in the complaint, the said properties were greatly depreciated in value because of the fact that they were not earning sufficient revenues to pay operating and maintenance expenses, and because said properties were worn and out of repair. And said defendant says that, because of these facts, in October, 1914, the properties of the Missouri River Telephone Company were worth not to ex-

ceed $11,000; the properties of the Dakota Telephone & Electric Company were worth not to exceed $4,000.

And said defendant says that the procedings whereby the sales of the properties of said corporations were made to defendant Bruce were in all things legal and regular; that said sale to Bruce was in good faith and not colorable or collusive; that the sum of $11,600 which he paid for the properties of the Missouri River Telephone Company and the sum of $400 which he paid for the properties of the Dakota Telephone Company were adequate prices therefor; that the Dakota Central Company paid to said defendant Bruce for said properties the sum of $16,000 by causing debts of the Missouri River Telephone Company in the sum of $11,077.86 to be paid to the creditors, taxes of the Dakota Telephone & Electric Company to be paid in the sum of $44.86, and the balance of said purchase price of $16,000 to be paid to the defendant Bruce.

The defendant Bruce answers, denying that there was any conspiracy or collusion between himself and either of the other defendants, alleging that all the proceedings for the sale of the corporate properties to him were regular and legal, denies that he had any knowledge or notice of the claim of the plaintiff Ward upon the stock of the corporations, alleges that his purchase of the properties was for an adequate price, and admits that he sold the properties to the defendant Dakota Central Telephone Company for $16,000. The answer of defendants J. G. Funston and E. B. Funston adds nothing to the issues, except that it alleges that, at the time they gave the note sued upon, the plaintiff Ward represented to them that the stock which he was selling to them had been paid in full, and in cash, that said representation was false, that said defendants believed the representation to be true, and that if they had not been induced so to do by the said representation they would not have purchased said stock; and they say that if said representation had been true the stock which they purchased would have been worth $35,000, whereas, as the facts were, it was not worth to exceed $15,000, and they ask as a counterclaim, that in addition to being relieved of any liability on the $20,000 note, they have affirmative relief in the form of judgment against Ward in the sum of $7,000.

Upon the issues so joined the actions were tried to the court

without a jury, and the court made findings of fact and conclusions of law and entered judgment in favor of the plaintiff Ward and against the defendants Funstons for the balance due according to the terms of the note, but dismissing the action against the other defendants and giving the defendants Bruce and the Dakota Central Telephone Company judgment for costs against the plaintiff Ward.

After the entry of this judgment the plaintiff Ward presented a motion for a new trial of the issues between himself and the defendants Bruce and the Dakota Central Telephone Company. This motion was denied, and Ward perfected an appeal from the judgment and the order denying his motion for a new trial. The defendants Funston, without moving for a new trial, appealed from the judgment against them, and both appeals are now presented to this court on one set of briefs.

The record is a long one, and there are many questions sought to be raised in the briefs of counsel. The double consolidation, arising from the trial of two actions as one in the trial court, and from the briefing of two different classes of appeals in one set of briefs, renders the adjudication of the matters before this court unusually difficult, and seems also to be rather confusing to the eminent counsel presenting the appeals, for we occasionally find them discussing, with reference to one appeal, matters that pertain only to the other. These facts seem to require that each appeal should be treated as a separate matter in this opinion despite the fact that the whole matter comes before the court as one appeal.

[1] We will first consider the appeal of the Funstons from the judgment against them. Their appeal is from the judgment only, without any denial of a new trial, and, according to strict rules of procedure, this brings before this court only the judgment roll. So far as the rights of these appellants are concerned, if the findings support the judgment, then the judgment should be affirmed. The record shows that on March 26, 1920, the trial court made findings of fact numbered from 1 to 14, inclusive, and entered its conclusion of law that judgment should be entered in favor of the plaintiff Ward and against the defendants Funston for the amount of the note and interest. An examination of these findings shows that they are entirely consistent and support the conclusions and the judgment.

[2, 3]    There after, and on October 14, 1920, on motion of defendants Funston, the trial court made and entered what are referred to as supplemental findings, which were numbered from 15 to 26, inclusive. And at said time the trial court, on its own motion, made and entered an additional supplemental finding numbered 27. Upon the entry of these supplemental findings, the court concludes that judgment should be entered in accordance with the original findings and conclusions entered on March 26, 1920.

The so-callel supplemental findings deal entirely with the evidence, which relates to the fraudulent representations alleged to have been made by the plaintiff Ward when he sold the stock to the Funstons. Findings 15 to 26, inclusive find that during the time prior to October 5, 1907, Ward was the owner of a very large majority of the stock of both the Dakota Telephone & Electric Company and the Missouri River Telephone Company; that about August 27, 1907, Ward and the Funstons entered into an agreement in writing for the transfer of Ward's stock to the Funstons, as alleged in plaintiff's complaint and as found by the court in its original findings. They further find that prior to making said agreement, Ward, as an inducement, represented to the Funstons that all of the stock which he was offering to sell to them had been fully paid for at its face or par value; that at the time he made such representations Ward knew them to be false; that the Funstons believed said representations and relied upon them; and that they would not have made the aforesaid agreement except for such belief in and reliance upon said representations.

They further find that at the time the Dakota Telephone & Electric Company was incorporated Ward owned a certain telephone line extending from Platte to Bijou Hills, and that while he was an officer of said corporation and the owner of a majority of its stock he sold said telephone line to said corporation for the sum of $12,000 and caused stock of the par value of $12,000 to be issued to himself in payment therefor. And in said connection the court further finds that the said telephone line sold by Ward to the corporation was of a value not to exceed $3,600; and that the said corporation did not receive from Ward, for $8,400 of the stock issued to him, *any consideration whatever consisting either*

10—Vol. 49, S. D.

*of money, labor done, or money or property actually received.* (The italics are ours.)

The court further finds that in the year 1902 Ward caused the property then owned by the Missouri River Telephone Company to be reinvoiced at prices approximately twice the value at which the property of the company had previously been carried on its books, and that said E. C. Ward was then the owner of 78 shares of the stock of said corporation, and his two brothers were the owners of four shares thereof, all of said shares being of the par value of $100 per share; that upon the aforesaid reinvoicing of the property of the corporation the said plaintiff Ward caused to be issued to himself 78 additional shares and to his brothers four additional shares of the stock of said corporation of the purported par value of $100 per share; and that for the *said 82 shares of capital stock so attempted to be issued the said Missouri River Telephone Company received no consideration whatsoever in money, labor done, or property.* (Again the italics are ours.)

The court goes on further to find that thereafter the form of the capital stock of the Missouri River Telephone Company was changed to shares of a par value of $25 per share, and that for the 82 shares of a par value of $100 each which were issued without consideration 328 shares of a part value of $25 per share were issued. And the court further finds that the said 84 shares of the stock of the Dakota Telephone Company of par value of $100, each and the 328 shares of the Missouri River Telephone Company of the par value of $25, which were issued without consideration as aforesaid, were a part of the stock sold by the plaintiff Ward to the Funstons; and the court also finds that the defendants J. G. Funston and E. B. Funston did not discover the facts as to the issuance of these shares of stock without consideration until on or about the time these actions were commenced, and that the payments made by the defendants Funston upon the principal and interest of the $20,000 note were made before said defendants discovered the facts as to the issuance of this stock and the misrepresentation made to them by the plaintiff Ward at the time he sold the stock to them. And finding No. 26 is to the effect that the stock sold by the plaintiff Ward to the defendants Funston was not worth to exceed $12,000 at the time of such sale.

But by the so-called supplemental finding that immediately upon the sale by Ward to them the Funstons went into actual possession of the entire property of the two corporations; that they had actual knowledge of the condition and value of said property; and of the stock purchased by them at the time of making each of the payments made by them; that said defendants by their action have rendered the restoration of the property impossible; and that each payment made by them, with knowledge of the condition and value of the corporate property and stock, was an affirmance of their contract with Ward, even though some of the stock had not been paid for as Ward represented to them. And the trial court again concludes that judgment should be entered as directed on March 26, 1920.

The appeal of the Funstons raises the sole question whether the findings, taken as a whole, are sufficient to support the judgment. As above stated, the findings originally made are consistent and amply support the judgment. It is only the subsequent entry of the so-called supplemental findings that furnishes any ground for questioning the validity of the judgment.

Counsel for the appellants J. G. Funston and E. B. Funston contend that the facts found by the court in these supplemental findings will not justify any conclusion but that Ward's sale to the Funstons was void because procured by fraud and misrepresentation; that the stock was actually worth only $12,000; and that the Funstons, having paid Ward more than that amount, are entitled to judgment on their counterclaim for damages. Counsel for the appellants Funston contend, and it seems to be their theory as set forth in their brief, that the damages which they claim they had sustained would be measured by the difference between what the stock was actually worth at the time they purchased it from Ward and the purchase price of $35,000 as agreed upon in the contract of sale.

The counterclaim of the Funstons seems to be the usual counterclaim in an action for fraudulent and deceitful representations as to the property sold, and contains the usual allegation as to the damages, and in such action they plead that if the property had been as represented at the time of sale it would have been worth $35,000, but that it was actually worth at said time only $15,000, and the trial court in its findings places the value at $12,000.

The trial court does not make any finding as to what the value of this stock sold to the Funstons by Ward would have been at the time of sale if it had been as represented; that is 130 shares of Stock of the Dakota Telephone & Electric Company and 1,016 shares of stock of the Missouri River Telephone Company. And after a careful examination of the whole record in this case it would seem there was no evidence offered by any witness in any manner on the question as to what the value of this stock at the time of the sale would have been had it been as the Funstons claim it was represented by Ward. Therefore the trial court had no evidence before it upon which to base any amount of damages that the appellants Funston should recover.

The elements of actionable fraud, as set forth in 26 Corpus Juris, p. 1062, are as follows: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted upon by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. (9) And his consequent and proximate injury. And more briefly the elements are defined as representation, its falsity, scienter, deception, and injury. On page 1064 of Corpus Juris, vol. 26, the author uses this language:

"Fraud without damage or damage without fraud is not actionable; but where both concur, an action lies. Each of the elements must be established, and the absence of any one of them will prevent recovery."

In this case the Funstons failed to establish any amount of damages, and the court failed to find any amount of damages which they had sustained.

This court, in the case of Hallen v. Martin, 40 S. D. 343, 167 N. W. 314, approved an instruction given by a trial court in the trial of an action for fraud and deceit in defendant's representation as to the kind, quality, value, and fitness for agriculture of land traded for, whereby the plaintiff was induced to enter into an agreement for exchange. In that case the trial court instructed the jury that the measure of plaintiff's damage was the difference between what the property he traded for was worth and what it would have been worth if it had been as represented, and this

court approved that instruction and adopted what is termed the majority rule. That rule is also approved by this court in the case of Barker v. Coats, 41 S. D. 45, 168 N. W. 797.

The court having failed to find the amount of any damages which the Funstons have sustained in accordance with the rules above stated, the trial court did not err in making his conclusions in favor of the respondent Ward in that action, and the judgment of said court in favor of Ward and against the Funstons should be affirmed. We do not deem it necessary to pass upon the question as to the validity of the stock in these two telephone companies which the defendants Funston claim was void.

[4] Having determined the issues upon the appeal of the defendants Funston, the questions on the appeal of the plaintiff Ward may be disposed of very briefly. As Ward had a valid claim against the Funstons on their note, there was a good consideration for the pledge of the stock to Ward as security for the payment of the note. Ward had possession of the certificates of stock, and they were properly assigned to him as security. Therefore he held good title to them as such security, without any record of the assignment being made on the books of the corporations. Banking & Trust Co. v. Taylor, 25 S. D. 577, 127 N. W. 590, 29 L. R. A. (N. S.) 523, and authorities there cited.

In this Taylor Case, Judge Whiting, speaking for this court, says that where a debtor has delivered certificates of stock to his creditor, and has assigned the stock as security for the debt, a third party purchasing the stock from the pledgor, even for full value, would acquire no title as against the pledgee, although no record of the transfer to the pledgee appeared on the records of the corporation, and the purchaser had no notice of the pledge. If that be true, Ward's title to the stock was absolute except as to any limitations placed upon it by his contract with the Funstons. This contract specially provides that the Funstons should not vote the stock to sell any property of the corporations, except minor parts thereof, before the full payment of their note. Therefore the act of the Funstons in voting the stock in favor of the sale of the entire property and assets of the corporations was in direct violation of their agreement with Ward. If the Dakota Central Telephone Company could not buy the stock from the Funstons while it was pledged to Ward, as held in Banking & Trust Co.

v. Taylor, supra, it is difficult to understand how it could destroy the value of the stock by taking title to all the assets of the two corporations, it having actual knowledge at the time of Ward's rights in the matter.

[5, 6] The witness Bickelhaupt was, at all times material to this case, the secretary of the Dakota Central Telephone Company, and correspondence received in evidence shows that Ward offered to sell the Funston note to the Dakota Central Company, and that he advised Bickelhaupt that the note was secured by about $40,000 of the stock of the corporations sold to the Funstons, and that the agreement provided that if Funston allowed the property to depreciate or the security to run down in any way the note became due and payable at once. Bickelhaupt in his reply letter stated that Funston had informed him that Ward held a contract whereby Funston agreed not to make any joint traffic arrangements or to dispose of his stock without Ward's consent. And in a later letter Bickelhaupt declines to purchase the note "for the reason that the property covered by this mortgage is in fact a duplication of the lines which we now own, and for that reason would not be very desirable for us."

But Bickelhaupt afterwards attended a meeting of the stockholders of the two corporations controlled by the Funstons, and at such meetings he voted stock owned by himself as trustee of the Dakota Central Company in favor of a sale of all the property of the two Funston corporations, and at those meetings he witnessed Funston voting the stock, which he knew to be pledged to Ward, in favor of such sale. Besides this, Mr. Bickelhaupt testified that he knew that the note held by Ward was secured by a pledge of the stock sold to the Funstons. And he admits that Lane told him that Funston could not sell to either the Bell Telephone Company or to the North Western Telephone Company. And he says that Lane told him that they could not buy the property direct from the Funstons and that Bruce was buying it and they could buy it from him And he says that after negotiating practically all day with Bruce and Lane he offered to pay $16,000 for the property, And Bruce testified that he and Lane talked it over on the side about selling the property to the Dakota Central Company, and he then, in the presence of Lane, offered Funston $12,000 for the property. Neither Bruce nor Lane paid any

money on the deal. The Dakota Central Company deposited $16,000 in a Huron Bank with instructions to pay $4,000 to Bruce on delivery of the bill of sale, from the remaining $12,000 to pay off the debts of the two corporations and pay any balance that might remain to the corporations or their legal representative. J. L. W. Zietlow, the president of the Dakota Central Company, testified that he negotiated with Lane for the purchase of the property; that Lane said he was sure the Dakota Central Company could buy it from Bruce; that he (Zietlow) finally offered $16,000, and Lane said he would report it. This was on September 25th, the day after the stockholders' meeting, at which it was voted to authorize the directors of the two Funston corporations to sell all the properties of the corporations, but five days before the directors accepted Bruce's bid of $12,000.

After Bruce had secured a bill of sale from Funston, and had assigned it to the Dakota Central Company, it took possession of the property of the two Funston corporations, and proceeded to take down or dismantle large parts of the telephone lines of said corporations and to convert the property to its own use, in such manner as to destroy the property of the plaintiff Ward for the enforcement of the lien created by the pledge of stock to him.

Under the facts as shown by this record it is apparent that Bruce and the Dakota Central Telephone Company are jointly liable for the conversion of Ward's security; that each of these defendants had actual notice of Ward's rights as pledgee, and that the ostensible purchase of the property by Bruce was a mere subterfuge to enable the Dakota Central Telephone Company to acquire the property of a competitor; that Bruce knowingly allowed himself to be used as a mere conduit or cover in said transaction, and converted to his own use part of the price paid by the Dakota Central Telephone Company for the property.

J. G. Funston, one of the defendants, was a trained and educated electrician, with several years' telephone experience, and he had managed the property of the Dakota Telephone & Electric Company and the Missouri River Telephone Company for about 7 years prior to the time it was sold in 1914. He was called as a witness by the Dakota Central Telephone Company, and stated that this property on October 1, 1914, was worth about $30,000. Mr Bickelhaupt, the secretary of the Dakota Central Company, as

shown by the undisputed evidence, at the stockholders' meeting on September 24, 1914, stated that the property of these two companies should sell for $30,000 or $33,000. Witnesses for the plaintiff in this action placed the value of the property at not less than $50,000, and we think its value was established at not less than $30,000 by a clear preponderance of the evidence. It is apparent that defendant Bruce and the Dakota Central Telephone Company had full knowledge of the facts rendering fraudulent the said purported sale, and that they are jointly and severally liable for the conversion of the said property, and should account to the appellant for the reasonable value thereof.

The judgment and order of the trial court, in so far as appealed from by appellant Ward, should be reversed. That part of the judgment appealed from by appellants J. B. Funston and E. B. Funston is affirmed. That part of the judgment appealed from by appellant Ward is reversed, and the case is remanded, with instructions that the trial court proceed according to law to enter judgment in accordance herewith.

SHERWOOD and GATES, JJ., dissenting.

SKINNER and EDDY, Circuit Judges, sitting in place of CAMPBELL and DILLON, JJ., disqualified.

Note.—Reported in 206 N. W. 695. See, Headnote (1), American Key-Numbered Digest, Appeal and Error, Key-No. 281(1), 3 C. J. Secs. 850, 864; (2) Corporations, Key-No. 121(5), 14 C. J. Sec. 1094; (3) Fraud, Key-No. 59(2), 27 C. J. Sec. 243; (4) Corporations, Key-No. 123(4, 14 C. J. Secs. 1106, 1114; (5) and (6), Corporations, Key-No. 123(10), 14 C. J. Sec. 1125 (Anno.)

On validity of pledge or other transfer of stock of corporation when not made in the books of the company, as against attachments, executions, or subsequent transfers, see notes in 67 L. R. A. 695; 20 L. R. A. (N. S.) 996.