**SPERRY CORPORATION, SPERRY NEW HOLLAND DIVISION, A Corporation, Plaintiff and Appellee,**

v.

**Stanley SCHAEFFER, Defendant and Appellant.**

**No. 15180.**

Supreme Court of South Dakota.

Considered on Briefs May 22, 1986.

Decided Oct. 8, 1986.

William D. Kunstle of Moore, Rasmussen, Kading & McGreevy, Sioux Falls, for plaintiff and appellee.

James R. Haar, Tripp, for defendant and appellant.

KONENKAMP, Circuit Judge.

Sperry Corporation, Sperry New Holland Division was awarded a deficiency judgment against Stanley Schaeffer (Stanley) as a result of Stanley's co-signing a retail installment contract. Stanley appeals; we affirm.

Stanley and Allen Schaeffer were partners in a farm operation. In September of 1980, they jointly purchased a Sperry New Holland TR 70 combine from Ritter-Walz, a Parkston implement dealer. Sperry Corporation financed the purchase. When they dissolved their partnership in early 1981, Stanley agreed that Allen would keep the combine. Stanley then attempted unsuc-

cessfully to free himself from his joint obligation for the unpaid balance.

In September of 1981, Allen signed an installment sales contract with Ritter-Walz for the purchase of a new Sperry TR 75 combine with certain attachments. He offered the TR 70 as a trade-in. The remaining debt on the TR 70 was $34,500.[1] When the contract was forwarded to Sperry Corporation for financing, Sperry rejected it stating that both Stanley's signature and an additional down payment would be required.

Ritter-Walz prepared another installment sales agreement for both Allen's and Stanley's signature. Allen and Ritter-Walz signed it and Allen asked Stanley to co-sign. Stanley was reluctant, however, convinced that if he did so he would be liable for the entire debt if Allen defaulted.

When Allen was unsuccessful, Ritter-Walz sent its salesman to Stanley's home to persuade him to sign. The salesman told him that if he continued to refuse, the TR 75, which had already been delivered to Allen, would be retrieved. While the salesman waited, Stanley phoned one of the owners of Ritter-Walz to inquire about the necessity for his signature. The response was that "the trade-in ... was half his and the combine deal just couldn't go through by releasing him from the debt and putting all the debt to Allen." The owner emphasized that either Stanley would sign the new contract or financing would be disapproved and he and his brother would still be obligated for the balance on the TR 70.

When he hung up the phone, Stanley asked the salesman what he would "be getting into" if he signed the agreement and his brother failed to make the payments. According to Stanley, the salesman told him that "all they would do was repossess the combine." Indeed the salesman revealed on direct examination that such was his "feeling," but he would "suppose" that he knew this statement was not correct at the time he made it. The salesman frankly admitted that, if necessary, he was not above misleading Stanley to get his signature. Stanley, on the other hand, conceded that he knew he was not obligated to sign, but did so reluctantly because he wanted his brother to have the new combine, and immediately regretted it because he feared the consequences.

With both Allen's and Stanley's signature on the contract, Sperry approved the financing and took assignment of the contract, allowing the TR 70 as a trade-in toward the purchase of the new TR 75. When Allen failed to make the payments, the TR 75 was repossessed. After proper notice, it was sold for an amount less than the total debt and Sperry sued for and obtained a deficiency judgment.

■ Stanley argues that the first TR 75 agreement—signed only by Allen—extinguished his joint obligation on the TR 70, therefore he received nothing for his promise to pay on the agreement he signed; since his brother received the TR 75, there had to be other consideration for his signature. Stanley's reasoning is based on *Richter v. Industrial Finance Co., Inc.*, 88 S.D. 466, 221 N.W.2d 31 (1974), where we held that there must be separate consideration for a guarantor's signature, apart from the original obligation. By the terms of the contract, Stanley was a co-purchaser of the TR 75, not a guarantor, and therefore *Richter* is inapplicable.[2] Stanley's consideration was the TR 75 as well as extinguishment of the debt on the TR 70. The fact that Stanley and Allen's arrangement called for Allen to have the TR 75 does not deprive Stanley of consideration. Furthermore, Allen and Ritter-Walz signed a new agreement effectively rescinding the first agreement after Sperry refused financing. Since he was not a party to the first agreement, Stanley cannot avail him-

---

1. The TR 70 had a trade-in allowance of $43,000 minus the amount owing on it, for a net allowance of $8,500.

2. Nor was Stanley an accommodation party under SDCL 57A–3–415, because the retail installment contract did not constitute an "instrument" as defined in SDCL 57A–3–102, 57A–3–104.

self of its terms, especially when the contract was not created for his benefit. SDCL 53-2-6.

Stanley next contends that when Allen and Ritter-Walz executed the first agreement on the TR 75 accepting the TR 70 as a trade-in, his obligation on the TR 70's unpaid balance was extinguished through accord and satisfaction. The fact that Sperry later refused to finance the purchase makes no difference according to Stanley; the agreement was nonetheless completed because it was not conditioned on acceptance of financing.

To constitute an accord and satisfaction there must be an agreement between creditor and debtor to extinguish the obligation in a given manner and a compliance with that agreement by the creditor. SDCL 20-7-4; *Hubbard Milling Co. v. Frame*, 310 N.W.2d 155 (S.D.1981). Here the first agreement was executed by Ritter-Walz and Allen, not Stanley. The creditor was Sperry who would not accept the first agreement; therefore, there was no agreement between creditor and debtor and thus no accord and satisfaction.

Stanley's most cogent argument is that his signature was obtained through fraud. He testified that he only signed the contract on the salesman's promise that no claim would be made against him if his brother, Allen, defaulted. Yet the circuit court found that Stanley entered the agreement with open eyes, knowing that if Allen defaulted he would be liable for the unpaid balance. The trial court reasoned that the salesman's remarks were not fraudulent, but merely an opinion on the consequences of a possible future event.

The burden of establishing fraud rests on the party who seeks to rely on it for affirmative relief or as a defense to an action. *Northwest Realty Co. v. Colling*, 82 S.D. 421, 147 N.W.2d 675 (1967); *City of Vermillion v. Hugener*, 75 S.D. 106, 59 N.W.2d 732 (1953). To prove fraud there must be a misrepresentation: (1) known to be such (or recklessly conceived) by the party making it; (2) made for the purpose of inducing the other party to act; and (3) relied on to the detriment of the innocent party. *Ward v. Dakota Telephone & Electric Co.*, 49 S.D. 135, 206 N.W. 695 (1925). The character of the misrepresentation must be such that a person of ordinary business intelligence would be entitled to rely on it. *Peterson v. Hoftiezer*, 35 S.D. 101, 150 N.W. 934 (1915).

An actionable misrepresentation must relate to a past or existing fact and not a future event. *Reitz v. Ampro Royalty Trust*, 75 S.D. 167, 61 N.W.2d 201 (1953). An exception to this rule exists where the misrepresentation of a future occurrence is made by one who purports to have superior knowledge of the matter. *Reitz, supra*. When the salesman's comments were made, Stanley had just finished a phone conversation with the owner who explained the reason why Stanley's signature was necessary: Allen's credit was insufficient. A careful examination of the contract or another phone call to Ritter-Walz would have dispelled any misconception Stanley may have received from the salesman's auspicious pronouncement. Hence, the facts were equally available to Stanley. *See Roper v. Noel*, 32 S.D. 405, 143 N.W. 130 (1913).

The trial court is in a unique position to assess the testimony of the witnesses and barring a clearly erroneous interpretation of that evidence we will not disturb its findings. SDCL 15-6-52(a). Stanley could not reasonably rely on an opinion he solicited from the salesman—even if it was falsely conceived—when simple logic and everything Stanley knew about the matter contradicted that opinion. The trial court's findings were not clearly erroneous.

Stanley's other assignments of error are without merit.

Affirmed.

MORGAN, HENDERSON and FOSHEIM, JJ., concur.

WUEST, C.J., concurs specially.

KONENKAMP, Circuit Judge, for SABERS, J., disqualified.

WUEST, Chief Justice (concurring specially).

I concur in the result in this case, but would cite SDCL 53–4–5 defining fraud in relation to contracts rather than *Ward v. Dakota Telephone & Electric Co.*, 49 S.D. 135, 206 N.W. 695 (1925). There is a difference between fraud and deceit, SDCL 20–10–1 and 20–10–2, and fraud in relation to contracts, SDCL 53–4–5. *See Rist v. Karlen*, 90 S.D. 426, 241 N.W.2d 717 (1976), and *Nielson v. Edwards*, 34 S.D. 399, 148 N.W. 844 (1914).