NEILSON, Respondent, v. EDWARDS, Appellant.

(148 N. W. 844.)

1. **Fraud—Sale of Land—Action for Deceit—Representations as Facts—Question for Jury.**

In an action for damages for deceit, consisting of false representations as to character and value of land in connection with its sale, evidence held to present a question for the jury as to whether defendant made the representations as positive statements of fact, or merely recited what a third person had told him; the evidence, while not showing that defendant had ever seen the land, failing to show he had not seen it.

2. **Deceit—Acts Constituting—Actual Fraud, Distinguished From Deceit—Statutes.**

Civ. Code, Sec. 1201, relating to contracts, defines actual fraud within the meaning of that chapter of the Code. Sec. 1293, in the part of the Code relating to obligations imposed by law, defines deceit within the meaning of Sec. 1292. **Held**, that, while Sec. 1201 is very similar to Sec. 1293, it does not apply to actions in tort.

3. **Action for Deceit—Complaint for Knowingly Misrepresenting Facts—Relevancy of Instructions.**

In an action for deceit, a complaint which, after alleging representations by defendant, alleged their untruthfulness, "as defendant well knew and had reason for knowing," raised an issue under Civ. Code, Sec. 1293, subd. 2, defining "deceit" as asserting as a fact that which is not true by one who has no reasonable ground for believing, etc., as well as under subd. 1, defining "deceit" as the suggestion as a fact of that which is not true by one not believing it to be true, since it is immaterial, in stating a cause of action under subd. 2, whether the complaint alleges that defendant had no reasonable ground for believing the representations to be true, or that he had reason for believing them to be untrue, especially where the complaint is not demurred to, or subjected to motion to make more definite; and the trial court properly submitted the question whether the representations were made recklessly, without knowledge or information on the subject.

4. **Pleadings—Action for Deceit—Defective Complaint—Failure to Demur or Move to Make Definite—Construction of Pleading— Waiver.**

Where a complaint attempted to allege a cause of action for deceit, consisting of assertion as a fact of that which was not true by one having no reasonable ground for believing it to be true, and the sufficiency of the complaint was not challenged by demurrer, or by motion ·to make more definite, it will be liberally construed on appeal.

5. **Pleadings—Allegation of Ultimate Fact, Not Conclusion, What is,**

In an action for deceit, an allegation that representations by defendant were untrue, "as defendant * * * had reason for knowing," was an allegation of an ultimate and issuable fact, and not of a conclusion, since, to require setting out facts in support of an allegation of want of reasonable cause for belief, would probably require pleading of evidence.

(Opinion filed October 6, 1914. Rehearing denied.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by Jesse A. Neilson against Ira J. Edwards, to recover damages for deceit in sale of land. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Boyce, Warren & Fairbank,* for Appellant.

*Albert Matson,* and *Hall, Alexander & Purdy,* for Respondent.

(1) Under point one of the opinion, Appellant cited:

Humphrey v. Merriam (Minn.) 20 N. W. 138; Lovelace v. Suter, 67 S. W. 736 (Mo.); Adams v. Barber, 139 S. W. 489 (Mo.); Krause v. Cook, 108 N. W. 81 (Mich.); Merwin v. Arbuckle, 81 Ill. 501; Cooper v. Lovering, 106 Mass. 77; Hansen v. Kline, 113 N. W. 504 (Ia.); Stevens v. Allen, 32 Pac. 922 (Kan.); Nash v. Rosesteel, 94 Pac. 850 (Cal.); Moore v. Scott, 66 N. W. 441 (Neb.).

Respondent cited:

20 Cyc. 58, 32; Davis v. Central Land Co. (Ia.) 143 N. W. 1073, 1076; Haven v. Neal (Minn.) 45 N. W. 612; Bullitt v. Farrar (Minn.) 43 N. W. 566.

(2) Under point two of the opinion, Appellant cited:

Volume 20 Cyc., Fraud, at pages 24, 27; Davis v. Central Land Co., 143 N. W. 1073 (Ia.); Kimber v. Young, 70 C. C. A. 181; Kountze v. Kennedy, 41 N. E. 414, 29 L. R. A. 260 (N. Y.);

Boddy v. Henry, 85 N. W. 771, 53 L. R. A. 769 (Ia.); Pittsburg
Life & Trust Co. v. Life Ins. Co., 78 C. C. A. 408; Hartford In-
surance Co. v. Hope, 81 N. E. 595 (Ind.); Mayer v. Salazar, 24
Pac. 596 (Cal.); St. John v. Berry, 66 Pac. 1031 (Kan.); Civ.
Code, Sec. 1293, subd. 1.

Respondent cited:

Civ. Code, Sec. 1293, subd. 2, 3; 20 Cyc. 27, 30.

(3) Under point three of the opinion, Appellant cited:  _

Allison v. Jack (Ia.) 40 N. W. 811; Robbins v. Barton
(Kan.) 31 Pac. 686; Humphrey v. Merriam, 20 N. W. 138; Han-
sen v. Kline, 113 N. W. 505.

Respondent cited:

Thomas v. Beebe, 25 N. Y. 244, 249; Ross v. Mather, 51 N.
Y. 108, 114; Baird v. Malcolm, 2 Johns. (N. Y.) 550; Book 3 L.
Ed. 482; Beebe v. Knapp, 28 Mich. 56; 20 Cyc. 100; Davis v.
Central Land Co. (Ia.) 143 N. W. 1073; 9 Ency. of Pleading and
Practice, 696; Civ. Code, Sec. 1292.

GATES, J. This is an action for damages for deceit. The
complaint, after alleging in substance that defendant on Septem-
ber 5, 1911, represented to plaintiff that he was the agent and had
authority to sell for the owner a tract of land in Montana contain-
ing 600 acres, alleged that defendant did at said time—
"willfully, falsely, and fraudulently state and represent to this
plaintiff that the said above described land was first-class arable
land and could and would produce good crops of grain and alfalfa
and that it was suitable for farming purposes, and that the same
was located within eight miles of a railroad station and market,
and that the said land, by reason of its said qualities and location,
was reasonably worth at least $8 per acre, or $4,800 for the said
tract, and that the qualities of said land were such that the plaintiff
could, within a very short time, if he desired, sell the said land for
$20 per acre, and for the purpose of further deceiving and defraud-
ing this plaintiff, and as an assurance to the plaintiff that his
representations were true, the defendant agreed that unless the
plaintiff got $20 or more per acre for said land, he, the defendant,
would forfeit $1,150 of the purchase price of said land. That the
defendant, before and at the time of making said false and fraudu-
lent representations to the plaintiff, was informed by this plaintiff

and well knew that the plaintiff desired to purchase land for the purpose of operating a farm wherein he could raise all kinds of grain and alfalfa, and that he did not desire to purchase any land that was not suitable for such purposes. That at the time aforesaid the plaintiff informed the defendant that he did not desire to purchase said land unless he should first have an opportunity to examine it, but that defendant willfully, falsely, and fraudulently and for the purpose of deceiving this plaintiff, and persuading him to purchase said land without examining the same, stated and represented to this plaintiff that unless the plaintiff purchased said land on that date, September 5, 1911, he could not purchase it at all, as he had certain payments to make thereon at once, and, further, that another person was negotiating with him for the purchase of the same, and he reiterated and repeatedly stated and represented on said date to the plaintiff that the said land was suitable for farming purposes, as aforesaid, and of great value with the intent and purpose that plaintiff should rely upon such representations and purchase said land without examining the same. (3) That the plaintiff on said date, being so persuaded and induced by the defendant, and relying upon the truth of the said statements and representations concerning said land, its qualities and value, as so stated and represented by the defendant to him, did purchase from him the said land and all of the interest of his principal, Reuben M. Cecil, the holder of the contract for deed therefor, for the sum of $4,800, and on that date paid to the said defendant the sum of $1,200 in cash, and conveyed to him a creamery and all of the machinery and appurtenances thereto in the city of Brookings, then owned and operated by the plaintiff, at the agreed value of $1,450, which creamery was fully examined by defendant at that time, and agreed to pay to the defendant the further sum of $1,150, making a total of $4,800. That thereupon the defendant caused to be assigned to this plaintiff by the said Reuben M. Cecil, and Lydia, his wife, the certain contract for the sale of said premises by the Northern Pacific Railway Company, a corporation, which was the owner thereof, to the said Reuben M. Cecil, of St. Paul, Ramsey county, Minn., dated May 11, 1911, upon which it appears that the said Cecil had made but one payment of $200 and interest, and that there remained to be paid thereon the sum of $1,000 in annual payments of $200 each.

(4) That the plaintiff, on or about December 20, 1911, made an effort to examine the said land, but after arriving in the vicinity of said land he found the country was covered with snow to a great depth, and that it would be impossible to examine the same, or to ascertain its quality or value, and that the plaintiff was compelled to return home without ascertaining any of said facts. That plaintiff, on or about May 6, 1912, after the snow had gone, again went to examine said land, and thereupon he discovered the true character of said land and the false and fraudulent representations that had been made to him by the defendant as aforesaid. Plaintiff alleges that said land is not, and was not at the time of said transaction, good arable land, and that on the contrary the same was rough, impregnated with alkali, barren, with occasional tufts of sagebrush, and unsuitable and entirely unfit for raising crops of any kind, or alfalfa, and could not be used for farming purposes, as defendant *well knew and had reason for knowing at the time of making the sale thereof to the plaintiff,* and that the said land was valueless, or in any event worth not to exceed $2 per acre, and only fit, if for anything, for the purpose of grazing, and for that purpose only on about 10 acres thereof, and that said land is entirely unfit and valueless for the purpose for which the plaintiff purchased it, to-wit, for farming and raising alfalfa and other crops. Further, that said land is not within eight miles of a railroad station, and that on the contrary the nearest railroad station thereto is about seventeen miles. (5) That if said land had been as represented by the defendant to the plaintiff as aforesaid, it would have been of the value of $8 per acre, or $4,800 altogether, but that as a matter of fact it is entirely valueless for the purpose of farming and raising crops, for which the plaintiff purchased it, and is of no value whatever, and that the plaintiff has sustained damages by reason of said premises and said willful, false, and fraudulent representations of the defendant, in the sum of $4,800."

[1] The answer of the defendant was a general denial. Upon the trial, at the conclusion of the plaintiff's evidence, the defendant moved for a directed verdict, which was denied. Defendant offered no evidence, and thereupon the jury returned a verdict for plaintiff in the sum of $2,000. From the judgment entered thereon, and from an order denying a new trial, defendant appeals.

The following excerpts from plaintiff's testimony show his version of the representations made by defendant; the same constituting the only evidence upon that subject:

"He said it was eight miles from Baker. I asked him about the surrounding country. He said they raised all kinds of crops there, including corn, flax, and alfalfa. I asked him if this particular land was good for the same purposes. He said it was. * * * He said you could raise corn there and other grains. I asked him if it was all good, tillable land, and he said it was, but there was probably a few acres that could not be plowed. I understood him to say it could all be plowed but a few acres. It was 600 acres. He said there was one corner, in the south corner I believe, that was worth $25 of anybody's money. He said it was good grass land. I told him I had never had any experience and wanted him to do the square thing with me; that I did not want to do any deal of the kind unless he told the truth about it. He told me that I did not need to worry about that part of it; that as far as the land was concerned he thought I would be satisfied with it. He went to the trouble of calling it the Golden Valley out there. He told me after we got that matter talked that I better make a check to him for $1,200. I told him I would not do that; that I had a family to look after, and that I could not afford it without looking at the land. I told him I would give him the creamery as payment down and pay the money after I saw the land. He said, 'No, what do you take me for? I am here for the money.' I says, 'I cannot help that. I cannot do that.' Then I told him I did not want to buy at all. 'Well,' he says, 'that is too bad.' He said he had the expense of coming up there and then was not able to do business with me. I told him I could not help that. Edwards said he had to close the deal that day because he had a party in Chicago that was figuring on the land, and if we could not do business then we could not do it at all; that he had business out West that he was going to the Black Hills to look into. He agreed to forfeit $1,150. I think it was to show good faith that the land was fully worth $8 an acre or more, and I should not pay that unless I should get $20 an acre for it. He signed a statement to that effect."

On cross-examination the plaintiff testified as follows:

"I think Edwards said he came through the country. He did

not say that he had been over the land. He did not claim that he had seen the land. He said he had a relative that had been over all the land there, and he thought that was pretty good authority. Q. That he had a relative who had been over it, and he thought that was pretty good authority? A. Yes, sir. Q. He told you what this relative had told him? A. Yes, sir. He told me that he had negotiations with a Chicago man for the sale of this land. I do not remember of his saying that this Chicago man owned land in that vicinity. He did not tell me what the Chicago man said about the land. He said he had a party from Chicago who was negotiating to buy the land, and if we could not deal that day the deal would be off with us. I cannot remember whether he told me what this Chicago man said about the land or not. But he did tell me what this relative had said about it. He said this relative had been over the land, and he thought he was pretty good authority for it. Q. He [Edwards] did not claim to know anything about it [the land] himself? A. Yes, sir. He said that one corner of the land was worth $25 of any man's money. I cannot remember that he said he had been there. Q. But this relative told him about it? A. I don't know where he got it from, but he stated to me it was worth that much."

It appears from the testimony that the land was 17 or 18 miles from Baker, and was as bad in quality as alleged in the complaint, and not worth to exceed $2 or $3 per acre.

It is defendant's contention that the fair import of the plaintiff's testimony is that defendant had never seen the land, and that the defendant merely reported to plaintiff what his relative had told him. It is our opinion that while the evidence does not show that defendant had ever seen the land, it does not show that he had not seen it, and that from the evidence it was a question of fact for the jury whether the defendant merely recited what his relative had told him, or whether he made the representations as positive statements of fact.

[2-3] The principal contention of defendant and the only one which we think merits further consideration is that "the complaint makes out a case only of willful misrepresentations of facts within the knowledge of defendant," and that the instruction to the jury, "or that he made them recklessly without any knowledge or information on the subject, and with the intention that the defendant

should believe and rely upon them," was erroneous and prejudicial and not within the issues. This is an action in tort, and is therefore governed by sections 1292 and 1293 of the Civil Code, which appear under part 3 of division 3 of the Civil Code, viz., Obligations Imposed by Law, and is not governed by section 1201, C. C., which appears under part 2 of division 3 of the Code, viz., Contracts. The similarity of section 1293, C. C., to section 1201, C. C., has given rise to confusion. For instance, the writer in Roper v. Noel, 32 S. D. 405, 143 N. W. 132, erroneously cited section 1201, C. C., as being applicable to that case as well as section 1293, C. C. Also in McCabe v. Desnoyers, 20 S. D. 581, 108 N. W. 341, this court, after holding the action to be in tort, cited section 1201, C. C., as applicable, when it should have cited section 1293, C. C. Likewise in Mayer v. Salazar, 84 Cal. 646, 24 Pac. 597, that court committed the same error. Section 1292, C. C., and the portion of section 1293, C. C., applicable to this case read as follows:

"Sec. 1292. One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.

"Sec. 1293. A deceit within the meaning of the last section is either:

"1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true.

"2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true."

It is contended by defendant that under the allegations of the complaint the first subdivision of said section governs this case, and that, not having proven actual knowledge, the motion to direct the verdict should have been granted, and that the trial court committed error in giving the portion of the charge above quoted. We are of the opinion that the allegations of the complaint are broad enough to authorize a verdict under either of the above subdivisions of said section, and also to authorize the said instruction. In paragraph 4 of the complaint above set forth, the plaintiff asserted the untruthfulness of the representations *"as defendant well knew and had reason for knowing at the time of making the sale."* As compared with the language of the statute, that allegation is stated negatively, and when denied by answer raised two issues. For the purpose of interpretation of a pleading under sub-

division 1 of section 1293, C. C., it is entirely clear that the meaning of an allegation is the same whether it be stated that the defendant suggested as a fact that which was untrue, and that he did not believe it to be true, or whether it be stated that the defendant believed or knew that it was untrue. That is the first issue. The other issue is whether defendant had reason for knowing the untruthfulness of the representations. For the purpose of interpreting a pleading under subdivision 2 of section 1293, C. C., it is equally clear that it is immaterial whether the complaint alleged that the defendant had no reasonable ground for believing the representations to be true, or whether the complaint alleged that the defendant had reason for knowing or believing the representations to be untrue. If defendant had reason for knowing the representations to be untrue, he certainly had reason for believing them to be untrue, while of course he might have reason for believing and yet not have reason for knowing.

[4-5] If there be any question as to the sufficiency of the pleading as an allegation under the second subdivision of section 1293, C. C., such question should have been raised by demurrer or motion to make more definite. There was an apparent attempt to make such allegation, and the court should now construe it liberally. Rodee v. Seaman, 33 S. D. 184, 145 N. W. 441. But it is urged by defendant that this mere allegation is not sufficient as a matter of pleading to raise the issue; that facts upon which to base the allegation should have been alleged. This contention has been negatived in New York, and we think correctly, in the case of American National Bank v. Grace, 67 Hun, 432, 22 N. Y. Supp. 121. To require the setting out of facts in support of the allegation of want of reasonable cause for belief would probably require the pleading of evidence. We are of the opinion that such allegation is an allegation of an ultimate and issuable fact and not the allegation of a conclusion.

Finding no error in the record, the judgment and order appealed from are affirmed.