MOORE, et ux, Respondents v. KLUTHE & LANE INS. AGENCY, INC., Appellant

(234 N.W.2d 260)

(File No. 11377. Opinion filed October 3, 1975)

Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, for plaintiffs and respondents.

Costello, Porter, Hill, Banks & Nelson, Rapid City, for defendant and appellant.

COLER, Justice.

Plaintiffs, David and Ada Moore, were awarded by virtue of a jury verdict $9,000 for damages to their mobile home and $4,250 for damages to the contents of the mobile home occasioned by the June 9, 1972, Rapid City flood. The claim is based on the theory of negligent misrepresentation by an agent of the defendant as to the coverage of the policy in force as issued by Reserve Insurance Company of Chicago, Illinois. We affirm.

The numerous assignments of error relate essentially to the questions of whether: (1) a cause of action exists within this state for negligent misrepresentation and, if so, the propriety of the instructions under that theory; (2) the instructions given properly reflected the measure of damages to be applied; (3) the testimony of certain witnesses as to the value of the property was properly admitted, and whether the trial court erred; (4) in denying offers of proof of (a) receipts by plaintiffs from other sources under a claimed exception to the collateral source rule and (b) as to the liability of the agent to the defendant.

David Moore, a professor of foreign languages at the South Dakota School of Mines and Technology, and Ada, his German-born wife, bought the mobile home in May of 1970 for $8,250, which did not include certain appliances. Hugh Dougherty, an agent of Kluthe & Lane Insurance Agency, Inc., who lived in the same trailer court where the plaintiffs' mobile home was then parked, had sold an insurance policy on that mobile home to the previous owner and solicited from and sold to the Moores the same type policy on May 1, 1970.

On May 19, 1970, this coverage was increased from $8,000 to $10,000 on the mobile home and from $2,400 to $5,000 on the unscheduled personal property after plaintiffs had installed central air conditioning, replaced the appliances, added new skirting and added some furniture. Due to a number of factors, the plaintiffs found themselves compelled to move the mobile home in the fall of 1970 from the site on which it was placed when originally insured to a location in the proximity of Rapid Creek at a place aptly named "Brookside Trailer Court."

The testimony of both Mr. & Mrs. Moore, who had previously experienced flooding of their home in Omaha, reflects their recognition of the need for flood coverage on the mobile home and its contents at its new location. They doubted that they were afforded such coverage under the existing homeowners policy, which they acknowledged they had not read, and went to talk with Mr. Dougherty in the fall of 1970 in the offices of Kluthe & Lane Insurance Agency, Inc., Rapid City, South Dakota, to secure that coverage. It is the subject matter covered in that conversation, which admittedly took place, which was principal fact issue before the jury.

Mr. Moore's testimony, supported by that of his wife, was to the effect that Mr. Dougherty assured him that mobile home insurance coverage, being different from the regular homeowners policy on a home, had a comprehensive clause which afforded flood protection. Mr. Moore testified that Mr. Dougherty had shown him, in a company pamphlet, the language that governed which related to water damage. Mrs. Moore did not participate in the initial conversation; however, she testified that Mr. Dougherty, in her presence, did not deny the statement made by

Mr. Moore that Mr. Dougherty had assured him that their present contract of insurance covered flood damage. If believed by the jury, the most damaging testimony was that of Mr. Moore regarding final assurance purportedly given by Mr. Dougherty that the coverage was afforded. [1]

Mr. Dougherty denied that any such statements were made by him and testified that the conversation dealt only with the explanation of the provisions of the plaintiffs' policy and that he went through the named perils but did not review the exclusions contained in later language of the policy.

The contract in force was not in evidence as it had been cancelled, following denial of the claim on flood damage, and returned to the company. However, the defendant placed in evidence pamphlets which contained the essentials of the two insurance contracts which Reserve Insurance Company issued on the mobile homes at the time. Apparently, Moores were issued what is called by that company its "Preferred Mobile Homeowners Policy" which, in 23 pages of fine print, is not a comprehensive coverage but rather coverage of 19 named perils covering three and one-half pages. This list of perils contains no reference to flood damage. Certain perils are excluded from coverage under that policy if they result from flooding under later provisions of the policy. The other policy, with a slightly different coloration on the cover but substantially the same in design, is titled "Standard Mobile Home Insurance Policy." It is only 17 pages long and does, by virtue of a broad-form comprehensive protection, afford flood protection. The "standard" policy, being more comprehensive, apparently carried with it a premium of approximately $155 more than the "preferred" and if Mr. Dougherty had issued the "standard" policy he would have realized an additional commission of $30. Mr. Dougherty, by his

---

1. On direct examination of Mr. Moore, the following colloquy took place:
   "Q   Anything else now before we leave the subject; any further conversation you can think of about this particular subject?
   "A   Yes. I would say this. I was still a little bit dubious about being properly covered, and I said to Mr. Dougherty that I was a little bit unconvinced about this water damage really covering for a flood because we had been through it, and he said, 'Well, it may look a little bit vague, but I am sure if it ever went to Court that they would award in your favor.' "

own admission, did not push the "standard" policy with its comprehensive coverage. Because of the cost to the insured, he considered the "preferred" as a better buy. It is on the foregoing controverted facts that the issue of whether a cause of action exists for negligent misrepresentation must be determined. The issue of whether a cause of action is stated by the plaintiffs' complaint must be resolved in relationship to the extent to which this court intended to make available a right of action based upon negligent misrepresentation within the framework of our statutes and the common law. This court, for more than 30 years, has recognized the existence of such a cause of action. Quoting from Shearman & Redfield on Negligence, Rev.Ed., § 30, the cause of action was recognized by our court in *Boos v. Claude*, 1943, 69 S.D. 254, 9 N.W.2d 262, but as therein stated:

> "However, the rule is not without its limitations. As stated in the case of *International Products Co. v. Erie R. Co.*, 244 N.Y. 331, 155 N.E. 662, 664, 56 A.L.R. 1377; '* * * there must be knowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will because of it be injured in person or property. Finally, the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care.' " 69 S.D. at 260, 9 N.W.2d at 264.

While *Boos v. Claude*, supra, was decided upon an orally made express warranty given in connection with the sale of a motor vehicle, it did recognize one of the earliest applications of that theory in tort law. See Prosser, Torts, 4th Ed., Ch. 18, § 107, p. 710. This court has not, since *Boos v. Claude*, supra, been called upon to reexamine the doctrine and its development. The plaintiffs would have us extend the application of negligent misrepresentation and the defendant would have us limit the application to warranty situations and require compliance with SDCL 20-10, entitled "Liability For Deceit," to cases such as the one under consideration.

██ SDCL 20-9-1 is declarative of our basic negligence law. It does not by its terms exclude the consideration of negligence in the written or spoken word which brings about "injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence." SDCL 20-10 is declarative of common law rule. *Waggoner v. Midwestern Development, Inc.*, 1967, 83 S.D. 57, 154 N.W.2d 803. Certainly, SDCL 20-9-1 grants a cause of action for willful acts as well as for ordinary negligence. The distinction between the causes of action are essentially in the degree of proof and in the damages that may be awarded, i. e., punitive or exemplary. SDCL 21-3-2; *Kunz v. Johnson*, 1953, 74 S.D. 577, 57 N.W.2d 116. We do not, contrary to the construction called for by the defendant, deem SDCL 20-9 and 20-10 as mutually exclusive but construe them as compatible. We do not construe SDCL 20-10 as exclusive in cases of misrepresentation since there are varying degrees which are the subject of different claims for damages. *Neilson v. Edwards*, 1914, 34 S.D. 399, 148 N.W. 844, quite properly pointed out that earlier decisions of this court improperly equated the provision of SDCL 53-4-5, governing fraud in contract law, with SDCL 20-10-1 and 20-10-2. This court found no cause for overruling *Neilson v. Edwards*, supra, in *Boos v. Claude*, supra, and we see no compelling reason to do so as this claim too is based on tort, not contract law.

██ The development of the law on negligent misrepresentation since the pronouncements in *Boos v. Claude*, supra, is traced in numerous writings on the subject. Prosser, Torts, 4th Ed., Ch. 18, § 107; Restatement, Torts, § 552; Francis Bohlen, Misrepresentation As Deceit, Negligence or Warranty, 42 Harv.L.Rev. 733. These writings reflect the diversity among jurisdictions in defining the rights accruing under this theory of negligence, as does the work of Shearman & Redfield on Negligence, supra. Both the right and corresponding limitations as they have developed provide a meaningful and workable remedy and we hold that on the record the cause of action was properly established in this case.

We recognize that this holding is not unique for, as stated in 16 Appelman, Insurance Law and Practice, § 8845:

"An insurance agency or broker may be liable for negligent [sic] misrepresenting that the insured is covered, or for leading the applicant to believe that he has insurance protection."

However, we do not consider that insurance transactions are singled out for the application of this theory of negligence.

The nature of the relationship of the parties does carry with it certain established standards of care to be exercised by a party charged with a duty to another in given circumstances. Although decided under theories other than negligent misrepresentation, prior decisions of this court have firmly fixed the standards of care to be exercised by insurance agents and brokers as well as the duties of the insured to inform himself as to the provisions of the contract, the failure of which duty would ordinarily constitute contributory negligence, to bar recovery under SDCL 20-9-1. This court, in *Peterson v. Great American Ins. Co.*, 1952, 74 S.D. 334, 52 N.W.2d 479 and, as well, in *Farmers Mutual Automobile Ins. Co. v. Bechard*, 1963, 80 S.D. 237, 122 N.W.2d 86, recognized the duty of care owed by an agent to an insured due to the relative disadvantages suffered by the insured in such a complicated transaction. In *Craig v. Casualty Co.*, 1956, 76 S.D. 349, 78 N.W.2d 464, this court stated "Our court has recognized the right of an insured to rely on the superior knowledge of the agent respecting insurance matters." In *Peterson v. Great American Insurance Co.*, supra, and again in *Craig v. Casualty Co.*, supra, this court quoted with approval from the case of *Colby v. Life Indemnity & Investment Co.*, 57 Minn. 510, 59 N.W. 539, 542 as follows:

" 'The disparity of the parties must also be borne in mind. Ordinary men are not usually acquainted with all the intricacies of insurance contracts, while the insurer is presumed to be an expert on the subject; and it is a matter of common knowledge that the insured are accustomed to rely largely on the insurer for information as to their rights and liablities.' "

Clearly, under our law, the relationship of the parties in this case falls well within the limitations above set forth.

While the defendant proposed certain instructions which were refused, those proposed instructions were designed for defendant's theory of the case, that the cause of action was governed by SDCL 20-10. Those proposed instructions did not aid the trial court in this action brought on the theory of negligent misrepresentation. It would appear to this court that the first paragraph of Instruction No. 11,[2] being based upon the language of *Craig v. Casualty Co.*, supra, properly states our law. The second paragraph was obviously based on language found in *Neilson v. Edwards*, supra, which was an action determined to have been for deceit. SDCL 20-10-1 and 20-10-2. While that part of this instruction was not specifically approved by this court in *Neilson v. Edwards*, supra, the requirement of the instruction, that recklessness be found by the jury in order to render judgment for the plaintiffs in this case would seem more beneficial to the defendant than to the plaintiffs and the plaintiffs made no objection to the instruction. We are not by reason of the objection stated[3] compelled to rule on the accuracy of the instruction. See *Baumgartner's Electric Const. Co. v. De Vries,*

---

2.  Court Instruction No. 11 reads as follows:
    "An agent who holds himself out as being qualified to procure insurance is required to exercise the particular skill reasonable to be expected of one in that occupation, and to have adequate knowledge as to the different companies and the variety of terms and coverage available with respect to the insurance involved.
    "In proving a negligent misrepresentation, it is not necessary for the plaintiffs to prove that the agent intentionally or willfully misrepresented the coverage; it is sufficient if the testimony convinces you, by a preponderance of the evidence, that the defendant's employee in fact made representations to the plaintiffs about flood coverage which were false, and that the defendant's employee made such representations recklessly, without any knowledge or information on the subject and with the intention that the plaintiffs should believe and rely upon them."

3.  The defendant's objection as set forth states:
    "Defendant objects and accepts to giving Court Instruction Number 11 for all the reasons stated in the motion for direction verdict; for the further reason the instruction does not properly state the law with reference to the duty of the Defendant to the Plaintiffs in this action; that no where is the tort consent of deceit set forth in the instruction, and the instruction improperly states the law and does not state a rule of law that is applicable to the conduct of the Defendant or its employee Hugh Dougherty; the instruction allows the jury to speculate and conjecture without any clear guidelines as to just what the duty was owing by Dougherty to the Plaintiffs."

1958, 77 S.D. 273, 91 N.W.2d 663 and *Wittmeier v. Post*, 1960, 78 S.D. 520, 105 N.W.2d 65.

■■■ Defendant also objected to Instructions Nos. 12 and 13[4] and the failure of the trial court to include defendant's proposed Instruction No. 4.[5] Defendant has failed to point out with particularity wherein Instruction No. 12 was defective as required by SDCL 15-6-51(b). We find the instruction to be a fair statement of the liability arising out of the agency relationship. SDCL 59-6-9. Instruction No. 13 is likewise a fair statement of our law as stated in *Craig v. Casualty Co.*, supra, as it properly states the established duty imposed upon insurance agents and the lack of duty on the part of the insured to read and comprehend a policy of insurance. Defendant would seek to have an exception made to our rule that an insured is not contributorily negligent in failing to read his insurance policy. *Craig v. Casualty Co.*, supra;

---

4. Court Instructions No. 12 and No. 13 read as follows:
    Instruction No. 12.
        "The defendant, Kluthe & Lane Insurance Agency, Inc., may be held liable for the negligent misrepresentation on the part of one of its employees, providing the plaintiffs prove a detrimental reliance on such representation; that is, that the plaintiffs failed to procure coverage which, but for the broker's representation, could have been secured from some other agency or insurance company. The reason for this rule of law is that a corporation can act only through its officers and employees, and any act or omission of an employee made within the scope of his employment is considered by law to be the act or omission of the corporation for which he was then acting."

    Instruction No. 13.
        "It is no defense in this action that the plaintiffs failed to read the policy issued to ascertain the coverage provided under the policy if there is proof that the agent has misrepresented to the insured that the policy delivered contains the coverage being requested, because the insured has the right to rely on the superior knowledge of the agent respecting insurance matters."

5. Defendant's Proposed Instruction No. 4 reads as follows:
        "In connection with the instruction and definition of 'proximate cause' last given you, you are instructed that if the means of knowledge are at hand and equally available to both parties (in this case, the plaintiffs and the defendant's employee) and the subject matter is open to inspection of both parties alike, and there are no fiduciary or confidential relations, and no warranty of the facts, the injured party must show that he has availed himself of the means of information existing at the time of the transaction before he will be heard to say that he has been deceived by the misrepresentations of the other party."

*Farmers Mutual Automobile Ins. Co. v. Bechard,* supra. It is contended by the defendant that in the case of a well educated man not to read that which was offered to him should constitute negligence. The record does not reveal that the plaintiffs had, by reason of education or experience, the expertise which should deny them the right of reliance on the expertise of the insurance agent under our decisions. The instruction proposed by defendant, while approved on the facts in the case of *Roper v. Noel,* 1913, 32 S.D. 405, 143 N.W. 130, does not control in this case. This is so by virtue of *Craig v. Casualty Co.,* supra, and *Farmers Mutual Automobile Ins. Co. v. Bechard,* supra, as discussed above and further is distinguishable on the facts of those cases which are at material variance from the facts in this case. When all instructions given are read together we are not persuaded that the instructions in this case were erroneous, particularly where no instructions are offered by either party on this theory of negligence but our setting forth of Instructions 11 through 13 should not be construed as an approval of these instructions as a pattern or model set of instructions in all cases of this type.

Defendant objected to Instruction No. 15[6] as given by the trial court and alleges the trial court erred in refusing its

---

6. Court Instruction No. 15 reads as follows:

"You are instructed that if you decide for the plaintiffs on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate them for the following elements of detriment or damage proved by the evidence to have resulted from the misrepresentation of the defendant, whether such detriment could have been anticipated or not:

"1) The proper measure of damages to be applied with reference to the plaintiffs' mobile home is the difference between the fair market value of said mobile home immediately before and its fair market value immediately after the occurrence of the June 9, 1972, flood;

"2) The proper measure of damages to be applied with reference to the additional claim of the plaintiffs for loss of personal property located in the mobile home is the cost of making the necessary repairs to the damaged personal property or replacing those items of personal property destroyed, or if the property is such that it can neither be repaired or replaced, the fair market value of the property immediately before the flood, less the fair market value of the unrepaired property immediately after the flood.

"In arriving at the value of the personal property described in paragraph 2 prior to the flood, the jury has a right to consider its then depreciated value."

proposed Instruction No. 5. The instruction given by the court is, in keeping with the designed flexibility of the pattern jury instructions, a combination of South Dakota Civil Pattern Jury Instructions 30.01, 30.11 and 30.14, with the last paragraph added by the court to make clear that consideration should be given to depreciation, a concept only implied from the pattern instructions. While defendant claims that the measure of damages is governed by the contract of insurance as if it had been in force, we note that defendant's proposed instruction is also based on the pattern instructions. The material difference between that which was proposed by the defendant and that which was adopted by the court lies in whether or not the alternate measure of damages for a repairable property, South Dakota Civil Pattern Jury Instruction 30.13, was proper under the circumstances of this case. We conclude that that alternative was properly excluded.

The plaintiffs' testimony in this case established that, although the mobile home was not carried downstream by the flood waters, extensive damage was done to the mobile home after it repeatedly came into contact with other floating objects in the flood waters. The siding was dented and some panels were neither repairable nor replaceable. The frame of the mobile home had shifted, causing the roof to fit improperly. The insulation has been compacted where it came into contact with the water so as to render it useless and the axles were bent from the dragging of the mobile home to another location. Although the plaintiffs had spent approximately $1,900, there was no evidence that the mobile home was thus restored or that it could be restored to its original condition.

It is true that if there were facts before the jury from which it could find that the mobile home could be restored the necessary cost of repair is a properly includable alternative. *Grubbs v. Foremost Ins. Co.*, 1966, 82 S.D. 98, 141 N.W.2d 777. However, the burden of proof was on the agency to show the damaged mobile home could be restored to its former condition by suitable repairs or replacement. *Stucker v. Travelers Indemnity Company*, 1957, 77 S.D. 27, 84 N.W.2d 566.

The defendant offered no proof that the damaged mobile home could reasonably be repaired and we agree with the

trial court that the evidence did not warrant the submission of a limit to the agency's liability to the cost of repairs as an alternative. That alternative measure of damages has no application in case the mobile home is damaged beyond repair and cannot thereby be restored to its former condition. *Stucker v. Travelers Indemnity Company*, supra.

■ The remainder of Instruction No. 15, as it relates to the measure of damages for lost or damaged unscheduled personal property, adequately advised the jury of the measure to be applied. This is particularly so when depreciation, as a factor to be considered in arriving at damages, was added for clarity. The objection of the defendant goes more to weight and sufficiency of the evidence. That was a jury question which has been resolved and we find sufficient evidence in the record to establish that the jury followed the instructions.

■ The defendant's objection to the admission of the testimony of several persons who were experienced in buying and selling, or in repairing mobile homes and who were, in varying degrees, familiar with the mobile home both before and after it was damaged, was properly overruled by the trial court:

> "The qualifications and competency of a witness to give opinion evidence is primarily in the discretion of the trial court and his ruling in determining qualifications will not be disturbed unless there is no evidence that the witness had the qualifications of an expert or the trial court has proceeded upon erroneous legal standards. 20 Am.Jur., Evidence, § 786." *Helgerson v. Riiff*, 73 S.D. 467, 44 N.W.2d 126.

It is also true that:

> "The jury is not bound to accept the undisputed testimony of plaintiff's witnesses as absolutely true where defendant introduces no evidence to rebut it, where that evidence is weakened in some degree on cross-examination, *Rowan v. Becker*, 73 S.D. 273, 41 N.W.2d 836. The jury is the sole judge of the credibility of the witnesses and could determine how much of the evidence of the several witnesses they believed." *Grubbs v. Foremost Ins. Co.*, 82 S.D. 98, 141 N.W.2d at 779.

■ The defendant has alleged error of the trial court in denying its offer of proof that plaintiffs were the recipients of funds from various sources and which made available grants and low interest loans to the flood victims. This contention was based on the premise that the evidence was relevant for impeachment purposes as an exception to the collateral source rule. It would appear axiomatic that to define an exception to the rule it must be first found that this court has recognized the rule. We have not been made aware that this court has so recognized the rule but manifestly the trial courts have had occasion to both recognize and apply the rule as was done in this case. While the necessity for the rule and its application by the trial court is not questioned by either party herein it is nevertheless incumbent upon this court to consider both the purpose and scope of the rule as well as the discretion of the trial court to determine its application:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury * * *." Uniform Rules of Evidence (1974), Rule 403; 29 Am.Jur.2d, Evidence, §§ 261, 262; 47 A.L.R.3d at 240, n. 1.

We recognize the succinct statement of the collateral source rule by the Supreme Court of Idaho, *Swift & Company v. Gutierez*, 1954, 76 Idaho 82, 277 P.2d 559, as the correct statement of the rule. That court quoted from *Gersick v. Shilling*, 1950, 97 Cal.App.2d 641, 218 P.2d 583 at 589, that "Total or partial compensation received by an injured party from a collateral source, wholly independent of the wrongdoer, does not operate to reduce the damages recoverable from the wrongdoer." (citations omitted) However, although the rule generally applies in tort actions involving either injury to the person or property, 22 Am.Jur.2d, Damages, §§ 206, 211; Jones on Evidence, 6th Ed., § 4:48, we have observed no case, and none has been called to our attention, in which the wrongdoer's conduct was not the direct or proximate cause of the injury. Clearly, the agency did not cause the damage but is alleged to have misrepresented the insurance coverage to the plaintiffs' detriment and we see no compelling reason to distinguish between such wrongs. As stated

in *Grayson v. Williams*, 1958, 10 Cir.; 256 F.2d 61, we conclude that "No reason in law, equity or good conscience can be advanced why a wrongdoer should benefit from part payment from a collateral source of damages caused by his wrongful act. If there must be a windfall certainly it is more just that the injured person shall profit therefrom, rather than the wrongdoer shall be relieved of his full responsibility for his wrongdoing."

■ Having recognized the rule, we next deal with defendant's proposed exception. It appears to be defendant's contention that since plaintiffs had testified they performed the labor on the mobile home to make it habitable they have appealed to the sympathy of the jury and that evidence offered, notwithstanding the collateral source rule, was properly admissible as impeaching that testimony. The authorities cited by the defendant, however, deal with personal injury cases where there is some evidence of malingering. See 47 A.L.R.3d 234 and cases cited. We are not persuaded by the attempted analogy and hold that the trial court committed no error by its denial of the offer of proof.

■ Plaintiffs' counsel, during his opening statement, made reference to the fact that Mr. Dougherty was not being sued and why. Defendant's offer of proof was to the effect that by reason of arrangements between the corporation and the agent there was a limited liability on the agent to the defendant, which should have gone to the jury. We hold this contention to be without merit, for as previously discussed in connection with Instruction No. 12, the statement of counsel as well as Instruction No. 12 properly reflects the liability imposed on the corporation for acts of the agent.

We have reviewed the other assignments of error and find them without merit. Accordingly, we must hold that the trial court did not err in any of the matters reviewable by this court on the record.

Affirmed.

All the Justices concur.