Twila WORDEN, as Administratrix of the Estate of Harold Duane Worden, Deceased, Plaintiff and Appellant,

v.

The FARMERS STATE CO., INC. and Minnesota Mutual Life Insurance Co., Defendants and Appellees.

No. 14316.

Supreme Court of South Dakota.

Considered on Briefs Feb. 24, 1984.

Decided May 16, 1984.

---

Charles Rick Johnson of Johnson, Eklund & Davis, Gregory, for plaintiff and appellant.

Deming Smith and Michael J. Schaffer of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendants and appellees.

KEAN, Circuit Judge.

Appellant, Twila Worden, is the widow of Harold Worden (Harold) and the administratrix of his estate. She brought suit against Minnesota Mutual Life Insurance Company (Minnesota Mutual) and its agent,

Farmers State Co., Inc. (Farmers State) claiming Farmers State negligently failed to procure credit life insurance on the life of Harold or misrepresented the effective date of such insurance. Minnesota Mutual was sued under the theory of *respondeat superior*. Appellant appeals from an order of the trial court granting a motion for summary judgment. We affirm.

Harold worked for Bob Curtis Trucking, Inc., of Winner, South Dakota, since 1975 as an owner-operator of his truck. Robert Curtis (Curtis) was the president and owner of this business. It was not uncommon for Curtis to aid the owner-operators who worked for him in securing financing for the purchase of a truck by cosigning their notes if the owner-operators secured credit life insurance payable to the bank where the note was cosigned. Curtis assisted Harold in this manner in 1975, and Harold had acquired $20,000.00 of credit life insurance from Minnesota Mutual. The beneficiary was the Farmers State Bank of Winner.

On September 13, 1977, Harold purchased a new truck and obtained additional financing at the Farmers State Bank. Curtis cosigned a new note with Harold for $50,000.00 which consolidated the balance of the old loan with the new loan.

On September 25, 1977, Curtis contacted Ron Waller (Waller), the president of Farmers State Co., Inc., of Winner, an insurance agency unrelated to the financing bank. Waller is a licensed agent for Minnesota Mutual. Curtis told Waller he wanted Harold to apply for $30,000.00 in additional insurance because of the new loan. Since the total amount of insurance would not exceed $50,000.00, Waller told Curtis no physical was necessary. Curtis claims Waller told him that the policy would be in effect when the application was signed by Harold and received. Waller denies this. In any event, Waller discussed nothing with Harold, and, it does not appear Curtis talked with Harold about insurance after September 15, 1977.

In response to Curtis's request, Waller delivered an application to him. The application was a standard form furnished by Minnesota Mutual. Waller filled in part of the application, such as, Harold's name, birth date, and amount of insurance applied for. The application contained this phrase:

It is understood that the Company shall incur no liability because of this application unless and until it is approved by the Company and the first premium is paid while my health and other conditions affecting my insurability are as described in this application.

Information in this application is given to obtain insurance and is true and complete to the best of my knowledge and belief. For the purpose of establishing my insurability, and to the extent permitted by statute, I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person, that has any records or knowledge of me or my health, to give to The Minnesota Mutual Life Insurance Company any such information. I have read the statement on the back of this application. A photo copy of this authorization shall be as valid as the original.

Waller delivered the application to Curtis who in turn gave it to Harold's brother who was driving to Sioux City to meet Harold. When Waller received the signed application back on September 26, 1977, he noticed that Harold indicated he had seen a physician twice within the past two years. A telephone call was made to appellant who indicated that Harold had seen the doctor for routine blood work and an ICC physical.[1] This information was written on the application, and the application was sent to Minnesota Mutual on the same day. The home office received the application on September 29, 1977.

---

1. The listing on the application for an "FCC" physical is in error. Twila Worden was certain

the physical was for Harold's ICC permit.

The underwriting procedures at Minnesota Mutual required an attending physician's statement before approval of insurance if the applicant indicated he had seen a physician within the last two years. Harold's application fell into this category. A standard company procedure was then followed by Minnesota Mutual to secure this information. On October 3, 1977, a request for medical information was mailed to Harold's physician in Winner. A notice of this request was sent to Waller and Harold. The notice contained this statement:

> Before the underwriting of your application can be completed, we need a report from your doctor. We have written to him today and hope to have a reply soon. In the meantime, I want you to know your application has been received and will be processed as quickly as possible.

Appellant acknowledged receiving a letter from Minnesota Mutual. She gave it to Harold on or about October 13, 1977, when he was home between trips. She was aware of the contents of the letter. Weller received his copy of the notice.

The physician did not respond to the request. According to company procedure, Minnesota Mutual sent a second request to the physician on October 24, 1977. Again no response was made. Harold was killed in a trucking accident in Oklahoma on October 28, 1977. It was not until after Harold's death that Waller learned that the application had not been approved and that the physician had failed to respond. It is undisputed that the physician did receive the first request. No insurance premium was ever paid.

Minnesota Mutual paid the Farmers State Bank and appellant the sum of $20,-000.00 on the 1975 credit life policy.[2] It also notified appellant of the failure of the physician to respond to its request for information and its decision to decline the present application for additional insurance.

The issue presented to this court is whether there is a genuine issue of materi-al fact which might allow recovery against either the Farmers State or Minnesota Mutual. The theories of recovery are the negligent misrepresentation of the effective date of the insurance, or the negligent failure to procure the insurance. It is alleged that, since Waller was an agent for Minnesota Mutual, his negligence is imputed to his principal, Minnesota Mutual.

On a motion for summary judgment, the moving party has the burden to establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Wilson v. Great Northern Ry. Co.,* 83 S.D. 207, 157 N.W.2d 19 (1968). The evidence must be reviewed in a light most favorable to the nonmoving party. *First Security Bank, Morristown v. Skjoldal,* 90 S.D. 71, 237 N.W.2d 675 (1976). We conclude the defendants have met this burden.

No recovery can be allowed against Minnesota Mutual under either theory. South Dakota has aligned itself with those states which have held that there is no duty upon an insurer to promptly act upon an application for life insurance. *Miller v. Hanson,* 69 S.D. 218, 8 N.W.2d 927 (1943). Annot., 32 A.L.R.2d 487 (1953). An application for life insurance is nothing more than an offer for a contract and the insurer as offeree is under no duty to act upon the offer. Annot., 1 A.L.R.4th 1202 (1980). Even if such a duty existed, a delay caused by the insurer's diligent attempts to obtain information material to the risk cannot constitute negligence. *Id.*

As the facts show, the delay caused in passing upon Harold's application was solely due to Minnesota Mutual's attempts to learn the results of Harold's visits to his physician. Two requests were mailed to the physician; both requests went unanswered. Harold received notice of the first request and was specifically informed that the application had not been approved and would not be approved until his physician

---

2. The depositions revealed that other insurance, presumably collision insurance on Harold's ve-hicle, paid the balance of Harold's loan with no resulting loss of funds to the estate.

sent copies of medical reports. Under these circumstances, we cannot hold the insurer liable.

■ Appellant also argues that Waller's representations as to the effective date of the insurance should bind the insurer under the theory of *respondeat superior.* Again, we cannot agree and will assume such statements were in fact made to Curtis. In *Bullis v. Metropolitan Life Ins. Co.,* 85 Misc.2d 209, 380 N.Y.S.2d 525 (1976), an agent for the insurer made representations to an applicant for life insurance that once the application was signed and returned, the life insurance would be in force. The application contained a paragraph similar to the one found in Minnesota Mutual's application. The application was signed and sent to the insurer. No action was taken on the application prior to the applicant's death. In denying recovery, the New York Supreme Court held that such statements of an agent are merely expressions of opinion. The proposed insured is deemed to have known the contents of the application and cannot disregard any limitations that are contained in the application. In *Cavallo v. Metropolitan Life Ins. Co.,* 34 A.D.2d 682, 312 N.Y.S.2d 438 (1970), both the insurer and its agent were sued for negligently representing that life insurance was in force. The application again contained a limitation that no policy would be issued until accepted by the home office. In denying recovery against both defendants, the New York Supreme Court, Appellate Division, held:

> Plaintiff in this court claims the defendants are liable for the insurance which her deceased husband had applied for because the alleged statement of the agent of defendant Metropolitan Life Insurance Company to the effect that said deceased was covered for that insurance constituted a fraudulent representation. Aside from the fact that this claim has not been asserted in the complaint, since the documentary evidence in this case

established that unless and until the application was accepted by defendant insurance company at its home office and a policy issued the claimed insurance coverage did not exist, we are of the opinion that this new theory for plaintiff's action is also untenable.

34 A.D.2d at 683, 312 N.Y.S.2d at 439.

The application signed by Harold contained two limitations. The first was that Minnesota Mutual would incur no liability until the application was approved. This condition was dependent upon medical proof of insurability if necessary. The second was that the first premium had to be paid. Harold was bound by the terms of the application. *Cf. Matter of Estate of Laible,* 343 N.W.2d 388 (S.D.1984) (Henderson, J., specially concurring). When the necessary proof of insurability was not received, Minnesota Mutual was within rights not to issue the policy. Just as important was the nonpayment of the first premium. Since the application provided no liability would attach until approved and the first premium paid, a policy could not take effect until both events occurred. *Bowen v. Mutual Life Ins. Co.,* 20 S.D. 103, 104 N.W. 1040 (1905).

■ As to the claims against the insuring agency and its employee Waller, the same reasons apply to prevent recovery. Yet additional reasons also exist. To recover for negligent misrepresentation, it must be alleged and shown that the person acted or relied upon such misrepresentations. *See, e.g., Littau v. Midwest Commodities,* 316 N.W.2d 639 (S.D.1982). This element is absent. Harold never discussed insurance with Waller, only Curtis did. If any misrepresentation was made, it was made to Curtis. He is not a party to this action. There is no evidence he relayed such information for Harold to rely upon. *Moore v. Kluthe & Lane Ins. Agency, Inc.,* 89 S.D. 419, 234 N.W.2d 260 (1975).[3]

---

**3.** The *Moore* decision also notes that a duty may exist between insurance agents and an insured concerning representation made about the intricacies of insurance contracts. That is factually

different from the case before us where no insurance policy had been issued. Herein we are dealing with a simple, straightforward application form which does not carry the complex

There may be situations where an agent can be held liable for his failure to act. *See Lindsay v. Pettigrew*, 5 S.D. 500, 59 N.W. 726 (1894), and *Feldmeyer v. Englehart*, 54 S.D. 81, 222 N.W. 598 (1928), and *see generally*, 16A J. Appleman, *Insurance Law and Practice*, § 8831 (1981). But, there is a distinction between these authorities and the facts now before us. Liability has been found when the agent had the authority to bind the insurer, usually as to property or liability insurance, and failed to act or delayed in acting until after the loss was incurred. In this case neither Waller nor Farmers State could bind Minnesota Mutual upon an application for life insurance. Harold's application had to be approved by Minnesota Mutual and Harold was informed of this upon the fact of the application. More importantly, Waller acted promptly and with dispatch. He delivered the application to Curtis on the day requested. He called appellant on the day he received the application back to learn why Harold had seen the physician and this prevented a further delay. On the same day that he called appellant, he sent the application to the home office. The notice he received in early October, 1977, was routine and merely noted that a request was being sent to Harold's physician. Harold received the same notice. The appellant may not prevail upon her claim against the insurance agency.

The judgment is affirmed.

FOSHEIM, C.J., and WOLLMAN, DUNN and HENDERSON, JJ., concur.

KEAN, Circuit Judge, sitting for MORGAN, J., disqualified.

provisions of many life insurance or liability policies.