**Verne SWANSON of Crooks, Minnehaha County, South Dakota, and Persons Similarly Situated, Plaintiff and Appellant,**

v.

**SIOUX VALLEY EMPIRE ELECTRIC ASSOCIATION, INC., a South Dakota Corporation, Defendant, Cross Claimant, Third Party Plaintiff and Appellee,**

v.

**SOUTH DAKOTA MEDICAL HOLDING COMPANY, INC., d/b/a DakotaCare, a South Dakota corporation, Cross Defendant,**

**and**

**Insurance Associates, Inc., d/b/a Kundert–Williams Insurance Associates, a South Dakota Corporation, Third Party Defendant.**

No. 19008.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1995.

Decided Aug. 2, 1995.

Ronald G. Schmidt of Schmidt, Schroyer, Colwill & Moreno, P.C., Pierre, for plaintiff and appellant.

Alan F. Glover of Denholm and Glover, Brookings, for defendant and appellee.

SABERS, Justice.

Verne Swanson, a member of SVEEA, sued DAKOTACARE and SVEEA based on increased premiums and denial of liver transplant coverage under a group health insurance policy procured by SVEEA for its consumers and employees. Swanson settled with DAKOTACARE and DAKOTACARE was dismissed. The trial court granted SVEEA's motion for summary judgment. Swanson appeals and we affirm.

### FACTS

Verne Swanson (Swanson) is a customer and member of the Sioux Valley Empire Electric Association (SVEEA). Swanson was enrolled as a customer in SVEEA's group health insurance plan with Time Insurance Company (Time). In 1987, when Time proposed to raise premiums 38 percent, SVEEA sought alternative plans. A member advisory committee evaluated proposals and made recommendations to SVEEA's Board of Directors, who selected DAKOTACARE. DAKOTACARE was the plan carrier for SVEEA as of January 1, 1988. Swanson continued coverage through SVEEA by

switching to DAKOTACARE. Swanson renewed coverage in 1989, 1990, 1991 and 1992. During this time, DAKOTACARE made changes to the master plan and increased its premiums. Plan members were notified by direct mailings from DAKOTACARE and by SVEEA newsletters.

DAKOTACARE experienced a large loss ratio on the SVEEA account which it claims caused the company to raise premiums and create new groups with higher deductibles. The summary of the new contract sent to Swanson included benefit changes. Swanson renewed in 1990 under the "Proposed New Master Contract." DAKOTACARE did not cover liver transplants.

On December 25, 1992, Swanson received a liver transplant. DAKOTACARE denied his claim based on the exclusion for liver transplants. In 1993, Swanson could not select the preferred plan, which was a higher deductible and lower premium plan, because of medical underwriting requirements and his medical condition.

Swanson filed suit against DAKOTACARE and SVEEA for these tort claims: (1) negligent representation and deceit; (2) breach of fiduciary duty, seeking compensatory and punitive damages; and these contract claims: (1) breach of duty of good faith and fair dealing; (2) breach of his reasonable expectations under the contract; (3) unconscionability; and (4) estoppel and waiver regarding the enforcement of exclusions under his policy.

Swanson filed a motion for partial summary judgment on the issue of liability under SDCL 15–6–56. DAKOTACARE and SVEEA each moved for summary judgment. Swanson settled his claim against DAKOTACARE and the trial court dismissed DAKOTACARE from the suit. The trial court granted summary judgment to SVEEA. Swanson appeals and we affirm.

**Whether the trial court properly granted SVEEA's Motion for Summary Judgment?**

In reviewing the trial court's grant of summary judgment, we will examine each of Swanson's claims to determine if any genuine issue of material fact exists and to determine if SVEEA met its burden to show no genuine issue of material fact exists. *Dept. of Rev. v. Thiewes,* 448 N.W.2d 1, 2–3 (S.D.1989).

## 1. NEGLIGENT MISREPRESENTATION

A party seeking relief for negligent misrepresentation must prove:

> knowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will ... be injured in person or property. Finally, the relationship of the parties, *arising out of contract or otherwise,* must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care.

*Aesoph v. Kusser,* 498 N.W.2d 654, 656 (S.D. 1993) (citations omitted) (emphasis in original).

The representations relied upon must be false or erroneous. *Peterson v. Rogers,* 347 N.W.2d 580, 581 (S.D.1984) (citation omitted). Despite such representations, the insured must "inform himself as to the provisions of the contract, the failure of which duty would ordinarily constitute contributory negligence, to bar recovery under SDCL 20–9–1." *Moore v. Kluthe & Lane Ins. Agency, Inc.,* 89 S.D. 419, 234 N.W.2d 260, 265 (1975).

Swanson claims the promotional materials presented to enrollees in 1988 when SVEEA switched to DAKOTACARE negligently misrepresented that DAKOTACARE would cover every possible medical condition. Swanson admits he did not inquire about liver transplant coverage nor was he concerned about that coverage at the time. There is no dispute that Swanson was apprised of coverage, especially lack of liver transplant coverage, when he renewed the policy in 1990, 1991, and 1992. In fact, the first item on the benefit changes list for the 1990 plan explains which transplants are covered. Swanson admits he did not rely on a representation that liver transplants were covered. SVEEA has shown the absence of a genuine issue of material fact on the negligent misrepresenta-

tion claim and Swanson has failed to show otherwise.

## 2. DECEIT

Swanson claims SVEEA acted in a deceitful manner.

■ Deceit is:

(1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

(2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

(3) The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

(4) A promise made without any intention of performing.

SDCL 20-10-2. Questions of deceit are normally questions for the jury, however, summary judgment is proper if no evidence of deceitful intent is produced. *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 847 (S.D. 1990) (citations omitted). SVEEA has shown no genuine issue of material fact exists on the deceit claim and Swanson has failed to show otherwise.

## 3. FIDUCIARY DUTY/GOOD FAITH AND FAIR DEALING

■ Swanson claims SVEEA breached its fiduciary duty or alternatively, its implied duty of good faith and fair dealing. Swanson claims he relied on SVEEA's "superior experience, expertise, and knowledge and bargaining power ... for the negotiation and procurement of the best possible health coverages for himself and his family[.]" The existence of a fiduciary duty is a question of law for the court to decide. *Garrett*, 459 N.W.2d at 839 (citations omitted). A fiduciary is one who acts for another, is in a peculiar position of confidence, and the relationship implies a "condition of *superiority of one of the parties over the other.*" *Id.* at 837 (citation omitted) (emphasis in original).

Swanson claims he has no experience in insurance contracts. However, the trial court noted Swanson is an *educated farmer-businessman.* He served on township boards

and dealt with obtaining insurance for himself, his family and for the township in prior years. No evidence indicates Swanson was in a position of reliance on SVEEA in obtaining health coverage. *See Id.* "While an employer [or group policy holder] must respect the rights of the insureds, it does not stand in any particular position of trust or owe a fiduciary duty to them or to the beneficiaries of their [group health plan] certificates." 19 *Couch Cyclopedia of Insurance Law*, § 82:1 (Rhodes, 2d ed. 1983). SVEEA has shown no genuine issue of material fact exists on the fiduciary relationship claim and Swanson has failed to show otherwise.

■ Swanson claims SVEEA breached its duty of good faith and fair dealing in negotiating and procuring a group health insurance plan for its consumers and employees. Swanson claims SVEEA "injur[ed his] right ... to receive benefits of a health insurance contract and/or carrier that would have covered liver transplants[.]" All insurance contracts contain an implicit contractual duty to act or deal in good faith. *Helmbolt v. LeMars Mut. Ins. Co., Inc.*, 404 N.W.2d 55, 57 (S.D.1987). In *Garrett*, 459 N.W.2d at 843, we stated the duty of good faith and fair dealing arises from contract and not from tort.

[I]f employees contribute in paying the premiums on group insurance carried by the employer, the latter owes them the *duty of good faith and due care* in attending to the policy, and should make clear to an employee anything required of him to keep the policy in effect, and the time that premiums are due.

44 Am.Jur.2d *Insurance*, § 1852 (emphasis added).

SVEEA informed Swanson of his right to remain with Time or to switch to DAKOTACARE. SVEEA sent information and DAKOTACARE held informational meetings describing its coverage. SVEEA changed its group carrier to DAKOTACARE to attempt to reduce premium costs for its consumers. SVEEA and DAKOTACARE informed Swanson of the coverage under the DAKOTACARE plan, including the exclusion of liver transplants, through direct mailings and

member newsletters. Swanson admits that knowledge of the lack of liver transplant coverage would not have affected his choice to remain with DAKOTACARE. He has not shown any evidence that would raise a genuine issue as to SVEEA's failure to act or deal in good faith.

■ An employer procuring a group health insurance plan for its employees is "required to use reasonable care to select a solvent insurance carrier." *Nidiffer v. Clinchfield R. Co.*, 600 S.W.2d 242, 246 (Tenn.App.1980) (citation omitted). Swanson claims SVEEA chose a financially unstable company to provide health coverage. He claims this was the reason for the premium increases and for the "cherry picking" scheme which placed all the "sick" into one, higher paying class.[1] No evidence indicates SVEEA used less than reasonable care in selecting the group insurer or that the premium increases were not due to DAKOTA-

CARE's loss ratio after it took over the group.

We have reviewed the other issues raised by Swanson and consider them to be without merit.[2] We affirm.

MILLER, C.J., and AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.

---

1. In 1987, SVEEA was looking at four different proposals to change its group health plan carrier. Elaine Garry, director of human resources at SVEEA, stated that "one of the requirements [SVEEA] ha[d] is that an insurance company that comes in accept the entire group and not require evidence of medical insurability. That limits our prospects." In 1987, four companies accepted these conditions. Garry stated that SVEEA was aware that DAKOTACARE had been established the prior year, 1986. SVEEA requested and received DAKOTACARE's financial statistics each year, especially during the 1987 selection process. She also stated that SVEEA had received phone calls from "one or two or several" other insurance agents who "wanted to warn us about DAKOTACARE and their financial situation."

   In a December 16, 1987 letter to its members, SVEEA stated that its "objective in offering a group plan to you, is to provide you with the option of having the best possible group coverage." The letter cautioned members to carefully review the ramifications of switching from a group to an individual plan.

   On October 14, 1988, DAKOTACARE sent a letter to SVEEA about its financial status. The letter answered a question "on the length of time an individual enrollee is guaranteed coverage by our insolvency carrier in case DAKOTACARE ceases operation for reason of bankruptcy." SVEEA knew about a possible DAKOTACARE bankruptcy and reorganization from insurance agents.

   A December 8, 1988 letter from SVEEA to its members indicates:

   When Sioux Valley Electric decided to change major medical plans last year, the amount of participation, as well as the age and health conditions of the participants, had to be estimated. As a result, the premiums were also estimated. Now, after eleven months of claims experience with this new plan, the statistics show that the claims and related costs exceed the premiums by 37 percent. DAKOTACARE's only option is to raise the premiums for 1989.

   Swanson is not the only SVEEA consumer to have a liver transplant and be denied coverage. About "a year to two years prior [to Swanson]," Garry received a call from Donald Beyer about liver transplant coverage. She stated she read about the Beyer settlement in the newspaper, so she knew liver transplants were not covered by DAKOTACARE.

   As for the "cherry picking" scheme, SVEEA had knowledge that the healthy people were being placed in one group and all the "sick" people were in another plan.

   Garry stated that SVEEA could approve of DAKOTACARE's proposals each year or it could find another carrier. She called the renewal negotiations "discussions," thereby emphasizing the all or nothing nature of SVEEA's acceptance.

2. Swanson requested the trial court certify his action as a class action for those similarly situated under SDCL 15–6–23(a). In ruling on class action certification, we will reverse the trial court's denial only for an abuse of discretion. *Trapp v. Madera Pacific, Inc.*, 390 N.W.2d 558, 562 (1986) (citation omitted). Swanson has failed to show an abuse of discretion.